**UNITED STATES of America, Appellee,**

v.

**Jeanette SANTOS a/k/a Jeanette Ramos, Appellant.**

No. 90–1369.

United States Court of Appeals, Third Circuit.

Argued Nov. 15, 1990.

Decided May 3, 1991.

William A. DeStefano (argued), Christopher D. Warren, Conrad, O'Brien, Gellman, DeStefano & Rohn, Philadelphia, Pa., for appellant.

Michael M. Baylson, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Carlos A. Martir, Jr. (argued), Asst. U.S. Atty., Office of the United States Attorney, Philadelphia, Pa., for appellee.

Before STAPLETON, HUTCHINSON and GARTH, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Jeanette Santos (Santos), who is also known as Jeanette Ramos, appeals from a judgment of conviction and sentence entered against her in the United States District Court for the Eastern District of Pennsylvania following a jury trial. The jury convicted Santos on seven counts of cocaine-related criminal activity.

On appeal, Santos raises three issues. First, she contends that the district court abused its discretion by failing accurately and completely to submit her duress defense to the jury and by prejudicially commenting upon the strength and credibility of the evidence offered at trial in support of that defense. Second, she contends that the United States Sentencing Guidelines on their face violate the Due Process Clause of the Fifth Amendment to the United States Constitution. Her final contention is that the application of the Sentencing Guidelines to her case deprived her of due process of law. For the reasons set forth below, we will affirm the district court's judgment of conviction and sentence.

### I.

The indictment in this matter charged that Santos, her common law husband Elvin Ramos (Ramos) and a number of others conspired to possess with intent to distribute and conspired to distribute cocaine in Philadelphia and elsewhere. *See* Appendix (App.) at 10–24. The indictment also charged that on six different occasions, July 7, 1987, September 2, 1987, October

21, 1987, March 17, 1988, April 11, 1988 and May 22, 1988, Santos distributed a half ounce of cocaine. *See id.* at 25–30.

Following the issuance of the indictment, Federal Bureau of Investigation (FBI) agents arrested Santos in July of 1989. Santos was arrested at her home, where she lived with Ramos and her two young children, Christopher and Elvin, Jr. Immediately after the arrest, Santos suggested that she could help federal agents investigate and prosecute other drug offenses. Santos and her court-appointed attorney met with an FBI agent and an Assistant United States Attorney to discuss her possible cooperation. At the meeting, Santos agreed to cooperate but expressed fears for her safety and the safety of her children.

Under the terms of the agreement, Santos engaged in monitored telephone conversations with suspected criminals, took part in controlled purchases of narcotics and helped the FBI engage in electronic surveillance of suspected drug distributors. In exchange for her help, the government promised to place Santos into the Federal Witness Protection Program. Santos states in her brief on appeal that the government also repeatedly promised her leniency in connection with the charges against her.

Santos began cooperating with the government in late July of 1989. Two weeks following her arrest, the government moved Santos to a confidential location; however, after four weeks at the secret location she became despondent and attempted to take her own life. Santos was then hospitalized and subjected to a psychiatric evaluation. Following the suicide attempt, the government found Santos unfit to provide any further cooperation. As a result, the government asked the district court to revoke her bail.

Thereafter, the government approached Santos once again, this time asking for her help in the investigation and prosecution of the others named in the indictment against her. Santos met with case agents twice and provided them with detailed information about this case. At about the same time, the government began plea bargaining with all defendants named in the indictment. Santos was unable to reach an agreement with the government, so her case proceeded to trial.

At trial, Santos put forth the defense of duress. She claimed that Ramos, her common law husband, had engaged in a pattern of violent and abusive behavior towards her and her children. Santos introduced evidence that after the birth of her second child Ramos developed a serious problem with alcohol and drugs. As her common law husband's substance abuse problem worsened, Santos claimed that he became more abusive to her and her children.

Santos claimed that Ramos had stolen and run off with two kilograms of cocaine in 1986 that belonged to a major narcotics distributor. According to Santos, the distributor approached her and demanded that she repay Ramos's debt by distributing drugs. When she said no, Santos claimed that the distributor threatened her and her children. The next day, the distributor picked up her older son at school and delivered him to Santos' home. Only then, Santos stated, did she begin to distribute drugs.

Soon thereafter, Ramos returned home and insisted that Santos continue to sell drugs. According to Santos, Ramos continually beat her and her children and threatened them with guns and knives. In September of 1988, Santos sought assistance for herself and her children from a center for battered and abused women. The center housed Santos in a confidential location in the Philadelphia area and obtained a court order for Ramos's arrest.

At trial, Santos called as a witness Dr. John O'Brien (Dr. O'Brien), a forensic psychiatrist with extensive experience in the treatment of battered spouses. Dr. O'Brien testified that he had examined Santos and had concluded that she suffered from Battered Woman Syndrome. One of the symptoms of this syndrome, Dr. O'Brien testified, is that the woman is unable to sever her relationship with the abusive husband. Dr. O'Brien also testified that Ramos's violence towards the children

and his common law wife caused Santos to believe that if she stopped selling drugs the violence would only intensify.

In response to the duress defense, the government introduced tapes at trial that it had secretly made of Santos through another informant. These tapes, which provided the basis for the indictment against Santos, were recorded during the various cocaine sales that Santos was charged with having made. From these tapes, the government argued that the duress defense should be rejected because Santos did not sound as if she were an abused woman. The government did not attempt to disprove the instances of abuse Santos testified about, nor did the government introduce any expert psychiatric testimony of its own.

At the close of all the evidence, the district court informed the parties that it would submit the duress defense to the jury. In this appeal, Santos attacks the district court's duress charge, which we examine in detail below. Following its deliberations, the jury returned with a verdict of guilty on all seven counts of the indictment against Santos.

The district court sentenced Santos on May 4, 1990. During the hearing, Santos informed the district court that despite her cooperation with the authorities the government refused to file a motion for a departure below the Sentencing Guidelines range. Santos asked the district court to recognize her substantial assistance and depart below the Guidelines range. The district court declined to depart below the Guidelines range in the absence of a motion from the government. The district court sentenced Santos under the Guidelines to a prison term of 210 months. Santos has filed a timely notice of appeal.

## II.

We have appellate jurisdiction over the district court's final order of judgment and sentence pursuant to 28 U.S.C.A. § 1291 (West Supp.1990) and 18 U.S.C.A. § 3742(a)(1) & (2) (West 1985 & Supp.1990). The district court had subject matter jurisdiction pursuant to 18 U.S.C.A. § 3231 (West 1985).

To the extent that Santos properly objected to the district court's jury instructions, we review the instructions under the abuse of discretion standard. *See United States v. Beros*, 833 F.2d 455, 458 n. 3 (3d Cir.1987). To the extent that Santos seeks to raise on appeal errors in the jury charge that she did not call to the district court's attention, we review for plain error. *See* Fed.R.Crim.P. 30; Fed.R.Crim.P. 52(b); *United States v. Wright*, 921 F.2d 42, 46 (3d Cir.1990); *Beros*, 833 F.2d at 458 n. 3.

We exercise plenary review over the final two arguments that Santos raises, since both involve alleged due process violations arising out of the Sentencing Guidelines and their application in this case. *See United States v. Cifuentes*, 863 F.2d 1149, 1150 (3d Cir.1988).

## III.

### A.

At the close of the evidence, the district court informed the parties that it would send Santos' duress defense to the jury. Santos had proposed a specific charge to the jury concerning the defense of duress, and the district court informed Santos' counsel that it had no problem with her suggested charge.

In her proposed charge, Santos asked the district court to tell the jury that she bore the burden of proving the elements of the duress defense by a preponderance of the evidence. *See* App. at 39. She then asked the district court to instruct the jury that if Santos met her burden, the burden shifted to the government to disprove duress beyond a reasonable doubt. *See id.* at 45. The proposed charge also noted that Santos could establish duress as a result of the threats made against her children. *Id.*

The charge that Santos proposed explained that the preponderance of the evidence standard meant that her burden was to prove that it was more likely than not that she had established the elements of duress. *See id.* at 39. The elements of duress as set forth in Santos' proposed charge were:

First, that at the time [she] did the acts alleged in the indictment, she was acting in response to an immediate threat of death or serious bodily injury to herself or her children;

Second, that [she] had a well-grounded fear that the threats would be carried out if she did not do the acts alleged in the indictment; and

Third, that [she] had no reasonable opportunity to escape the threatened harm.

*Id.* at 41. Her proposed charge then proceeded to examine each element of the defense in more detail.

Counsel for Santos, in his closing argument to the jury, explained the meaning of preponderance of the evidence. He stated:

Members of the jury, preponderance of the evidence means, simply: Is it more likely that something happened than not? Sometimes lawyers and judges explain preponderance of the evidence to the jury by making the analogy to a scale, a simple scale; and they say, look at the evidence in favor of the proposition—and in this case the proposition is, was [Santos] under duress or not; and then look at the evidence against that proposition. And then whichever side preponderates or tips, that is where you should abide your decision.

Supplemental Appendix (Supp.App.) at 10–11.

Despite the district court's earlier statement that it would give Santos' proposed charge to the jury, the district court did not deliver her suggested charge verbatim. *See United States v. Goldblatt,* 813 F.2d 619, 623 (3d Cir.1987) ("It is, however, within the sound discretion of the trial judge to determine the particular language to be employed when charging the jury.").

While the district court instructed the jury that Santos carried the initial burden of proving the elements of the duress defense by a preponderance of the evidence, it did not define for the jury what "preponderance of the evidence" meant. Further, the district court did not tell the jury that threats of violence directed at Santos' children could support her duress defense. The district court did explain the meaning

of the term "beyond a reasonable doubt" in connection with the government's burden to prove guilt and to disprove the duress defense if Santos met her burden to establish the elements of the defense.

### B.

When the parties briefed this appeal in our Court, Santos once again maintained that the initial burden with regard to the duress defense was hers to establish the elements of the defense by a preponderance of the evidence. In her brief, Santos concentrated upon the district court's failure to define "preponderance" and the district court's failure to instruct the jury that it could consider the threats against her children in connection with her duress defense. The government, in its brief, did not dispute that Santos had to establish the elements of a duress defense by a preponderance of the evidence before the burden shifted to the government to disprove duress beyond a reasonable doubt.

At oral argument, however, the government for the first time "conceded" that Santos had asked the district court to give the jury an erroneous instruction on the duress defense. The government maintained that it was Santos' burden at trial to produce some evidence of each of the elements of the duress defense and that it was for the district court judge, and not the jury, to determine whether Santos had met this lesser burden. If the district court found that Santos met her burden of producing some evidence, the government contended that the district court should then have informed the jury in its instructions that the burden rested with the government to disprove duress beyond a reasonable doubt.

The government further explained its "concession" in a letter to the Court dated December 11, 1990. In the letter, the government cited in support of its position the opinion of the Second Circuit in *United States v. Mitchell,* 725 F.2d 832 (2d Cir. 1983), and our opinion in *United States v. Berkery,* 889 F.2d 1281 (3d Cir.1989).

In *Mitchell*, the Second Circuit announced a federal criminal rule, *see Smith v. Kelso*, 863 F.2d 1564, 1573 (11th Cir.), *cert. denied*, 490 U.S. 1072, 109 S.Ct. 2079, 104 L.Ed.2d 644 (1989), that once a defendant introduces sufficient evidence of the elements of duress to implicate that defense, the defense should go before the jury, before which the government bears the burden to disprove duress beyond a reasonable doubt. *See Mitchell*, 725 F.2d at 836.

In *Berkery*, we held that for a defendant to be entitled to a jury instruction concerning the defense of entrapment, the "defendant must produce evidence to show that he was not otherwise predisposed to commit the crime and that the government initiated the crime." *Berkery*, 889 F.2d at 1283. If a defendant produces this evidence, we wrote that the burden shifted to the government to prove the defendant's predisposition beyond a reasonable doubt. *See id.*

At the close of its letter, the government took the position that the district court's error in giving the jury the preponderance instruction that Santos requested was harmless error or at least was not plain error. Thus, the government asks us to uphold Santos' convictions even in light of the supposed error it has brought to our attention. Santos has not filed a response to the government's letter.

The defense of duress existed at common law. *See United States v. Bailey*, 444 U.S. 394, 409–10, 100 S.Ct. 624, 634, 62 L.Ed.2d 575 (1980). We have recently examined the elements of the duress defense:

> In a criminal law context, at least, duress contains three elements:
>
>> (1) an immediate threat of death or serious bodily injury;
>>
>> (2) a well-grounded fear that the threat will be carried out; and,
>>
>> (3) no reasonable opportunity to escape the threatened harm.

*United States v. One 107.9 Acre Parcel of Land*, 898 F.2d 396, 399 (3d Cir.1990).

■ The Constitution requires the government in a criminal case to prove beyond a reasonable doubt every element of a charged crime. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Thus, the government is correct in its "concession" that, to the extent that the charges against a defendant require the government to prove that the criminal acts were done with criminal intent, the government should from the outset bear the burden of disproving duress beyond a reasonable doubt once the defendant has introduced sufficient evidence concerning each element of the defense.

■ However, as the Ninth Circuit recently explained in *United States v. Dominguez–Mestas*, 929 F.2d 1379 (9th Cir. 1991) (per curiam), there is no constitutional bar to placing the burden upon a defendant to prove the affirmative defense of duress by a preponderance of the evidence where the crime charged contains no requirement of *mens rea*. In *Dominguez–Mestas*, the defendant was convicted of having knowingly imported into the United States certain merchandise, in this instance heroin, contrary to the law in violation of the second paragraph of 18 U.S.C.A. § 545 (West 1976). Since the statute did not require the government to prove specific criminal intent, the court held that it was permissible to place the initial burden upon the defendant to prove duress by a preponderance of the evidence before shifting the burden to the government to disprove duress beyond a reasonable doubt.

In this connection, we note that of the seven counts against Santos only the conspiracy charge expressly required the government to prove specific criminal intent. *See* App. at 14 (count one of indictment charged that Santos and others "did knowingly and willfully ... conspire ... to distribute and possess with intent to distribute cocaine ... in violation of Title 21, United States Code, Section 841(a)(1)"). The other six counts charged that Santos violated 21 U.S.C.A. § 841(a)(1) (West 1981), but they do not expressly require the government to prove more than that Santos "knowingly" distributed cocaine; Santos does not argue on appeal that her distribution of cocaine was unknowing.

Despite the lack of any objection on Santos' part to the district court's placement of the initial burden of proving duress, either before the district court or on appeal, we assume that we may consider the question under the plain error doctrine upon our own motion at the appellate level. *See Silber v. United States*, 370 U.S. 717, 718, 82 S.Ct. 1287, 1288, 8 L.Ed.2d 798 (1962) (per curiam) (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936) (dicta)); *see also* 3A C. Wright, Federal Practice and Procedure § 856, at 338 (1982).

 Plain error is defined as those errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Atkinson*, 297 U.S. at 160, 56 S.Ct. at 392. They are errors that "undermine the fundamental fairness of the trial...." *United States v. Young*, 470 U.S. 1, 16, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985). However, the doctrine is to be used "sparingly," *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982), and only where the error was sure to have had an "unfair prejudicial impact on the jury's deliberations," *Young*, 470 U.S. at 16 n. 14, 105 S.Ct. at 1047 n. 14. *See also United States v. Thame*, 846 F.2d 200, 204–05 (3d Cir.), *cert. denied*, 488 U.S. 928, 109 S.Ct. 314, 102 L.Ed.2d 333 (1988).

 We do not believe that plain error occurred in this case. *See generally Martin v. Ohio*, 480 U.S. 228, 233–34, 107 S.Ct. 1098, 1101–02, 94 L.Ed.2d 267 (1987) (no violation of Fourteenth Amendment's due process clause occurred where defendant had to prove affirmative defense by a preponderance of the evidence since jury was instructed to consider all evidence in determining whether prosecution proved elements of crime beyond a reasonable doubt).

### C.

While the jury instructions that Santos asked the district court to deliver, in the government's view, upped her burden of establishing a prima facie case of duress, her proposed instructions did define "preponderance of the evidence" and noted that

she could establish the defense of duress resulting from threats allegedly made against her children. The district court failed in its instructions to the jury to define "preponderance of the evidence" and failed to tell the jury that Santos could establish the defense of duress resulting from threats allegedly made against her children.

At a minimum, we believe that the district court had the obligation to charge the jury under the legal standards that Santos requested. *See United States v. Kapp*, 781 F.2d 1008, 1013 (3d Cir.) ("Clearly a defendant is entitled to a jury instruction on a theory of defense whenever some evidence supports that theory...."), *cert. denied*, 479 U.S. 821, 107 S.Ct. 87, 93 L.Ed.2d 40 (1986). Thus, we must decide whether the district court's failure to charge the jury on these two points is grounds for granting Santos a new trial.

We have written that "[a]n appellate court's function when reviewing jury instructions is to examine the entire charge to ascertain whether the district judge performed his duties properly." *United States v. Goldblatt*, 813 F.2d 619, 623 (3d Cir.1987). In *United States v. Castro*, 776 F.2d 1118, 1128 (3d Cir.1985), *cert. denied*, 475 U.S. 1029, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986), we stated: "In evaluating the charge given, we determine whether the instruction, viewed as a whole in the light of the evidence, fairly and adequately submits the issues to the jury."

 Santos argues that we must review the district court's failure to give the substance of her proposed instructions for abuse of discretion. *See Beros*, 833 F.2d at 458 n. 3. We disagree. Federal Rule of Criminal Procedure 30 states, in relevant part:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to all parties. The court shall inform counsel

of its proposed action upon the requests prior to their arguments to the jury.... *No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.* Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury.

Fed.R.Crim.P. 30 (emphasis added).

When the district court completed its charge to the jury, it called counsel for Santos and the government to sidebar and asked if either party had any objections. Santos' counsel stated: "I object to the refusal to charge points 1 through 6 of defendant's proposed points for charge." App. at 185. Points one through six of Santos' proposed points for charge were the written instructions Santos asked the district court to give the jury concerning the duress defense. *See* App. at 38–45. In response to the objection, the district court said: "I think I covered these." App. at 185.

Counsel for Santos did not object specifically to the district court's failure to define "preponderance of the evidence" or to the district court's failure to instruct that Santos could establish duress resulting from threats to her children. If Santos had made these specific objections instead of a general objection to the entirety of the district court's duress charge, it is reasonable to assume that the district court would have defined preponderance of the evidence and instructed the jury that Santos could utilize the alleged threats to her children to establish duress.

Instead, Santos waited until filing her brief on appeal to raise these specific objections. Thus, we are limited to reviewing Santos' objections to the charge for plain error. *See* Fed.R.Crim.P. 30; Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); *Castro,* 776 F.2d at

1128 ("Castro did not preserve properly his objection to the erroneous instruction, however, and this court therefore may review the matter only to assure that 'plain error' was not committed.").

Our opinion in *Castro* is directly on point. There, the defendant's proposed instruction included a proper statement of the government's burden of proof; nevertheless, the district court gave the jury an erroneous instruction. In objecting to the charge the district court delivered, Castro did no more than refer to his proposed instruction. He first raised the specific burden of proof objection on appeal. We wrote that "reference to a requested instruction does not satisfy Rule 30's specificity requirement." *Castro,* 776 F.2d at 1129.

We then proceeded in *Castro* to examine the reasons behind Rule 30's specificity requirement:

> The specificity requirement is not mere formalism. Without a sufficient objection, the trial judge is not apprised adequately of the disputed matter and of the need to take corrective action to avoid a new trial. Here, the trial judge responded to the request for an entrapment instruction with a charge that included reference to the government's burden of proof. Had he been informed subsequently of the discussion concerning burden of proof instructions in [other cases], it is reasonable to assume that he would have made a correction. Counsel's silence, however, denied him such notice, and instead allowed him to assume that his instruction satisfied the burden of proof portion of the defendant's earlier request.

*Id.* (citations omitted).

As in *Castro,* Santos has failed to demonstrate that her general objection to the district court's duress instruction sufficiently alerted the district court of the need fully to consider the specific objections that Santos now calls to our attention as the basis for granting her a new trial. Since we cannot infer that Santos' general objection permitted the district court to consider the specific objections she now raises on

appeal, we will review her objections for plain error.[1] In *Castro*, we noted "the Supreme Court's admonition that '[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.'" *Castro*, 776 F.2d at 1129 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977)).

### 1.

■ Santos claims that the district court erred when it failed to define "preponderance of the evidence" to the jury. We hold that on this record the district court's failure to define "preponderance of the evidence" did not constitute plain error.

Santos' counsel correctly defined the phrase "preponderance of the evidence" as part of his closing argument to the jury. The district court, in its instructions to the jury, stated that Santos bore the burden of establishing the elements of duress by a preponderance of the evidence. While the district court did not define the phrase, it did not contradict the definition that Santos' counsel gave.

We agree with Santos that it would have been preferable for the district court to have defined the phrase in its charge to the jury. Nevertheless, Santos' counsel gave the jury an accurate explanation of the legal meaning of the phrase, and that meaning is consistent with the common understanding of the words in the phrase. As a result, we believe that the jury could have easily viewed the district court's use of the phrase "preponderance of the evidence" as an endorsement of the explanation of counsel. In any event, we regard the possibility of a mistaken understanding of the phrase on the part of the jury as too remote to constitute plain error.

### 2.

■ Santos also objects to the district court's failure to instruct the jury that she could establish duress as a result of threats against her children. Once again, we review for plain error, but find none.

The Second and Ninth Circuits both recognize that a defendant may establish duress as a result of threats against family members. In *United States v. Contento-Pachon*, 723 F.2d 691, 694–95 (9th Cir. 1984), the court reversed the defendant's convictions because, *inter alia*, the district court, over the defendant's objection, refused to permit the defendant to introduce at trial any evidence that his criminal acts were the result of duress directed at him and his family. In *United States v. Bakhtiari*, 913 F.2d 1053, 1057 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991), the court wrote, "[l]ike the Ninth Circuit, we believe, albeit under conditions not present here, that a claim that a defendant's family has been threatened might help establish the defense of duress or coercion."

On the record before us, it is clear that the district court gave Santos wide latitude to introduce evidence concerning her fears about threats Ramos and the other drug dealer made against her children. Santos testified that these fears caused her to continue to sell cocaine. *See, e.g.,* App. at 110 ("[Ramos] was threatening me now with the children."). In his closing argument to the jury, Santos' attorney contended that the jury should consider the threats against her children in connection with her duress defense. *See, e.g.,* Supp.App. at 10.

The district court's charge focused the attention of the jury on the effect of external pressures on Santos' decision to participate in dealing drugs. The evidence of threats to herself was far more extensive and of no less probative value than the evidence of threats to her children. There was no evidence that the threats to her children had a greater or different impact on Santos than the threats to her own life and health. Given the judge's charge and the verdict, we know that the jury concluded, at a minimum, either that Santos had not shown by a preponderance of the evi-

---

**1.** When a district judge is confronted with a general objection to jury instructions, the proper course is for the judge to ask counsel the specific grounds for the objection. That procedure helps to ensure that mistakes in the instructions do not remain uncorrected.

dence that the direct threats to herself constituted duress, or that the government had established beyond a reasonable doubt that the direct threats to Santos did not constitute duress. Assuming the jury reached either one of these two conclusions on the evidence in this case, after the charge focused its attention on Santos' state of mind when she was deciding to deal in drugs, we think it unlikely that a charge making specific reference to the evidence of threats to the children would have affected the verdict. Common experience teaches us that a mother's will can be overcome by a threat of serious harm to her children. The district court's failure to give such a charge did not amount to plain error.

### D.

Santos' final objection to the district court's jury charge is that the district court prejudicially commented upon the strength and credibility of her duress defense. The district court gave the jury the following charge:

Now, [Santos] has offered as a defense that she was under duress when these transactions occurred; that is, the conspiracy as well as the six substantive offenses. In order to make out a case for duress, there must be an immediate threat of death or serious bodily injury. That means, immediate threat of death or serious bodily injury;

Secondly, a well-grounded fear that the threat will be carried out; and

Third, a lack of reasonable opportunity to escape the threat of harm.

Now, you have heard the evidence with respect to that. Mr. DeStefano on behalf of Miss [Santos], says she was under this series of—that she was under this—I don't want to call it a spell, but that her husband had abused her during this period of time and, therefore, she was under threat of death or serious bodily harm; and that it was well-founded the threat would be carried out and that she lacked a reasonable opportunity to escape.

You heard the evidence. You will have to determine whether or not, first of all whether the threat was immediate. Keep in mind whether her husband was even present on any of these transactions;

Secondly, whether the fear was well-grounded, that if she did not carry out the transaction she would be subject to death, or serious bodily harm; and

Third, that she did not have a reasonable opportunity to escape the threat of harm. If she had a reasonable opportunity to escape the threat of harm, then she can't make out her defense.

When you analyze the evidence, these are a series of transactions which occurred over a period of almost a year, 6 or 7 transactions, and you have to consider whether or not under the circumstances under which this lady got involved in these transactions was really acting under the fear that if she did not do this she would be subject to serious bodily harm; that it was immediate; that there was no way to avoid it, it was inescapable.

Certainly an abusive husband is no license to become involved in transactions, half pound or half ounce or half kilo transactions of narcotics.

But, if you find from the evidence that she was under an immediate threat which was well-grounded, feared that it would be carried out, and that she lacked a reasonable opportunity to escape the threat of harm, then if she satisfies you of that by a preponderance of the evidence, then the government must still nevertheless prove its case beyond a reasonable doubt that the defendant did not have a reasonable belief that serious and immediate injury would follow; or, 2, that at the time the defendant had a reasonable opportunity to escape such serious or immediate injury or death.

In the course of evaluating a reasonable opportunity to escape. You may consider whether a defendant took the opportunity to escape the threatened harm, and delivered herself up to the authorities at the earliest reasonable opportunity. That is just a factor which you can take into account in determining

whether or not she has made out her defense, and whether or not the government has overcome her defense by proof beyond a reasonable doubt.

App. at 181–83.

Santos' counsel did specifically object to the district court's summary of the evidence to support her duress defense. The transcript reveals the following exchange at sidebar out of the hearing of the jury following the conclusion of the district court's charge:

> MR. DE STEFANO: I object to you commenting on the evidence, and I respectfully request a mistrial on that basis that you commented on the evidence.
>
> I might add that I don't believe your charge was fair; and the tone and inflection in your voice made it clear that the Court expressed its belief in the unavailability of a defense to this jury.
>
> THE COURT: I have some serious doubts it is available under the circumstances. But nevertheless, I charged the jury. I did cover the points in the charge, okay?

App. at 185–86.

At the end of the sidebar discussion, the district court told the jury:

> Let me add one thing, ladies and gentlemen. During the course of my discussions, my instructions to you, I may have—I commented on the evidence and I also told you that if your evidence—if your conclusions are different than mine, of course you are entirely free to ignore any opinions you may think that I hold. You are the ones that have to decide the facts, not me. So that it is completely within your province. You can ignore any suggestion you might have obtained or gotten by reason of any comments that I might have made. You are the ones who are going to make the decision in this case, not me.

App. at 186.

Since Santos advanced a timely objection to the district court's characterization of the evidence she presented in support of her duress defense, we review this aspect of the district court's charge for abuse of discretion. *See Beros,* 833 F.2d at 458 n. 3.

In *United States v. Wilensky,* 757 F.2d 594, 597 (3d Cir.1985) (quoting *United Sates v. Beaty,* 722 F.2d 1090, 1093 (3d Cir.1983)), we wrote that "[t]he trial judge must not 'abandon his proper role and assume that of an advocate....'" Santos contends that this is exactly what happened here. We disagree.

While the district court's comment that, to paraphrase, "an abusive husband is no license to break the law" in isolation is arguably prejudicial to Santos' duress defense, we stated in *Wilensky* that "a few isolated, allegedly prejudicial comments by the trial judge are not sufficient to warrant a reversal...." *Id.* at 598. Instead, as we wrote in *Wilensky,* "a balancing process must be employed to determine whether the trial judge's comments have pervaded the overall fairness of the proceeding." *Id.*

Taking the duress charge as a whole, we hold that the district court's instruction did not exceed the bounds of impartiality. Furthermore, the district court's corrective instruction given at the insistence of Santos' attorney reminded the jury that it was solely the jury's responsibility to determine the facts. Therefore, on balance, we hold that the district court did not abuse its discretion in commenting upon the evidence Santos put forth in support of her duress defense.

### E.

In concluding our examination of the district court's jury instructions, it is helpful to summarize our holdings. We have held that the district court did not commit plain error when it allocated the burden of proving the defense of duress. We have held that the district court did not commit plain error in its jury instructions either when it failed to define "preponderance of the evidence" or when it failed to tell the jury that Santos could use threats against her children to prove duress. Finally, we have held that on balance the district court did not transcend its role as a neutral arbiter in summarizing the evidence concerning Santos' duress defense.

## IV.

■ In the first of Santos' two due process arguments, she contends that the United States Sentencing Guidelines on their face violate the Due Process Clause of the Fifth Amendment because they "transfer the bulk of sentencing responsibility and discretion away from the judiciary and vest that discretion in the prosecution." Brief for Appellant at 28. She relies heavily upon *United States v. Roberts*, 726 F.Supp. 1359 (D.D.C.1989), in advancing this argument. In *Roberts*, the district court held that the Sentencing Guidelines violated due process in vesting sentencing responsibility that had formerly rested with the judiciary in the office of the prosecutor. *See id.* at 1368. The district court later stayed this aspect of its opinion. *See United States v. Holland*, 729 F.Supp. 125, 134 (D.D.C.1990).

Unfortunately for Santos, the district court's opinion in *Roberts* has not been too well-received. Most recently, the United States Court of Appeals for the District of Columbia Circuit dealt *Roberts* a fatal blow. *See United States v. Mills*, 925 F.2d 455 (D.C.Cir.1991). In *Mills*, the District of Columbia Circuit reversed *Roberts* and flatly rejected a key underpinning of the district court's opinion, that the Sentencing Guidelines "violate due process by shifting influence over sentencing from the judiciary to the prosecutor ... [and] that due process cannot tolerate a related enhancement of the prosecutor's influence over sentencing." *Id.*, 925 F.2d at 462.

Before being rejected in its own circuit, *Roberts* failed to attract any followers from our sister circuit courts. *See United States v. Turpin*, 920 F.2d 1377, 1387–88 (8th Cir.1990) (rejecting *Roberts*); *United States v. Harrison*, 918 F.2d 30, 32–33 (5th Cir.1990) (per curiam) (same); *United States v. Sanchez*, 908 F.2d 1443 (9th Cir. 1990) (same).

In *Mistretta v. United States*, 488 U.S. 361, 364, 109 S.Ct. 647, 650, 102 L.Ed.2d 714 (1989), the Supreme Court wrote that "federal sentencing ... never has been thought to be assigned by the Constitution to the exclusive jurisdiction of any one of the three Branches of Government." Similarly, we stated in *United States v. Frank*, 864 F.2d 992, 1010 (3d Cir.1988), *cert. denied*, 490 U.S. 1095, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989):

> While the pronouncement of sentence after a trial or a guilty plea may be an inherently judicial function, ·the proposition that specifying the sentence is an inherently judicial function is not supportable either by history or by the text of the Constitution.

*See also Geraghty v. United States Parole Comm'n*, 719 F.2d 1199, 1208–10 (3d Cir. 1983) (holding that creation of federal parole board was not unconstitutional delegation of judicial function), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 133 (1984).

For these reasons, we hold that Santos' facial attack on the Sentencing Guidelines, which is predicated upon the argument that the Guidelines violate due process by impermissibly enhancing the responsibility of federal prosecutors in arriving at criminal sentences, must fail. While we agree with the District of Columbia Circuit that "there may well be pitfalls, from the standpoint of sound policy, in the substantial enlargement of the prosecutorial role in such decisions," *Mills*, 925 F.2d at 462, such an enlargement in the role of prosecutors does not lack a rational basis and thus does not violate the Due Process Clause of the Fifth Amendment. *See United States v. Huerta*, 878 F.2d 89, 94 (2d Cir.1989).

## V.

■ In her second due process argument, Santos contends that the application of the Sentencing Guidelines to her case deprived her of due process of law. Specifically, Santos attacks Guidelines § 5K1.1 and 18 U.S.C.A. § 3553(e) (West Supp. 1990), which limit a district court's ability to depart below a Guidelines sentence on account of a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense to instances where the government files a departure motion. *See United*

*States v. Gonzales,* 927 F.2d 139, 145 (3d Cir.1991).

Santos contends that the district court should have, on its own initiative, departed below the Guidelines sentence in her case in recognition of her substantial assistance even though the government did not file a departure motion. The district court refused to accept her suggestion that it had the power to depart in the absence of a government motion.

Section 3553(e) states, in relevant part:

Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

Guidelines § 5K1.1 tracks the language of the statute. It states:

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

At oral argument, counsel for Santos recognized that her "as applied" due process challenge was not likely to succeed unless he could distinguish our recent opinion in *Ehrsam v. Rubenstein,* 917 F.2d 764 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1324, 113 L.Ed.2d 257 (1991). In *Ehrsam,* we considered whether Pennsylvania's Mandatory Minimum Sentencing Act violated due process by giving the state prosecutors discretion whether to depart below the statutory mandatory minimum sentence. *See id.* at 766–67.

Noting the similarity between the Pennsylvania Act and the federal statute and Sentencing Guideline, we wrote:

There have been numerous due process challenges to the federal substantial assistance provision; none have been successful. In all, eight courts of appeals have rejected due process challenges to the substantial assistance provisions of the federal sentencing guidelines and 18 U.S.C. § 3553(e). We agree with the dis-

position of these cases and similarly find no due process violation in this case.

*Id.* at 767–68 (citations omitted).

There is no need to gild the lily. The reasoning of *Ehrsam* clearly foreshadows the result here. As a result, we follow *Ehrsam* and hold that Santos' "as applied" due process claim must fail. We thus join the other courts of appeals in rejecting due process challenges to the substantial assistance provisions of the Sentencing Guidelines and 18 U.S.C.A. § 3553(e).

## VI.

For the reasons set forth above, we will affirm the judgment of conviction and sentence entered against Santos in the United States District Court for the Eastern District of Pennsylvania.