NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2380
_____

UNITED STATES OF AMERICA

v.

RICHARD D. BYRD
a/k/a "Mook"

Richard D. Byrd, Appellant

(M.D. Pa. No. 1-08-cr-00314-001)
_____

No. 09-2432
_____

UNITED STATES OF AMERICA

v.

CLIFTON SHIELDS
a/k/a "D"

Clifton Shields, Appellant

(M.D. Pa. No. 1-08-cr-00314-002)
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Judge: Honorable William W. Caldwell
_____

Submitted Under Third Circuit LAR 34.1(a)
February 17, 2011

Before: SLOVITER and HARDIMAN, *Circuit Judges* and JONES, II,[*] *District Judge*.

(Filed: March 1, 2011)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Clifton Shields and Richard D. Byrd appeal their judgments of conviction and sentence following a jury trial. We will affirm both judgments of conviction and Shields's sentence, but will vacate Byrd's sentence and remand for resentencing.

I

We write for the benefit of the parties and recount only the essential facts, which we review in the light most favorable to the verdict. *United States v. Jimenez*, 513 F.3d 62, 69 (3d Cir. 2008).

From May to July 2008, Shields and Byrd oversaw a drug trafficking operation in Huntington County, Pennsylvania. Shields traveled from Baltimore to Huntington County in May 2008 to monitor drug sales by Laura Shope. During that time, Shields helped Shope prepare packages of heroin and cocaine base and maintained control over the drugs and proceeds from each transaction. Byrd, who also traveled from Baltimore, took over Shields's duties in June 2008. In addition to maintaining control over the

_____

[*]The Honorable C. Darnell Jones, II, District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

operation, Byrd frequently sold drugs directly to customers.

On July 24, 2008, the Pennsylvania State Police executed a search warrant at the Mill Stone Manor Hotel, where Shope, Shields, and Byrd were suspected of packaging and storing drugs. The search yielded 3.65 grams of heroin, 20.7 grams of cocaine base, 5.46 grams of marijuana, $1,565 in cash, 26 plastic baggies, and a revolver with a partially obliterated serial number.[1]

On August 13, 2008, the grand jury returned a five-count indictment charging Shields, Byrd, and Shope with various drug and firearm offenses. Shields and Byrd were tried together before a jury, and Shope testified against them pursuant to a plea agreement. During the trial, Brandy Rupert, Jess Heidle, and Jennifer Scott testified that they purchased drugs from either Shope or Byrd.

Following closing arguments, the District Court instructed the jury as follows: "[I]f your judgment of what the evidence has proved differs from – differs from what might have been argued or suggested by counsel, *or anything that I might say*, you follow your own judgment." Tr. 105 (emphasis added). During deliberations, the jury requested a supplemental instruction on the definition of "distribution." The District Court responded that "insofar as distribution is concerned, that simply means passing something from one person to another." Tr. 135.

Although the jury did not specifically request a supplemental instruction regarding *intent* to distribute, the District Court elaborated further:

---

[1] Shope testified at trial that Shields had purchased the revolver from a customer,

3

> If you're in possession of drugs, how do you know whether you intend to distribute them or not. I think it's been argued that usually that's a conclusion that you have to get to based on the other evidence. But I think one of the witnesses indicated that if a person has a very small quantity of a drug in their hand, you can probably conclude it's for personal use. But if a person has a lot of drugs and a lot of – with a lot of value, depending on other circumstances, you might be able to conclude that that person possessed that with intent to distribute it at a later time.

Tr. 136. Counsel objected to this instruction, stating that the Court was "actually commenting on evidence in this very case." Tr. 139. The Court noted counsel's objection but took no further action.

The jury returned guilty verdicts against Shields and Byrd for conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine and heroin, and for distribution and possession with intent to distribute 50 grams or more of crack cocaine. The jury also found Byrd guilty of distributing and possessing with intent to distribute heroin, but found Shields not guilty on the charge of possessing a firearm during and in relation to a drug trafficking offense.

The District Court calculated Byrd's imprisonment range under the United States Sentencing Guidelines (USSG) at 151-188 months based on his criminal history category of III and total offense level of 32. Byrd requested a mandatory minimum sentence of 120 months imprisonment, claiming that he should receive a downward variance to account for the crack/powder disparity. Finding "under all [the] facts" that the Guidelines range was reasonable, the District Court sentenced Byrd to the bottom of the range (151 months).

---

Garrett Steele, who had stolen the gun.       4

Unlike Byrd, Shields was classified as a "career offender" under USSG § 4B1.1 based on his prior convictions for armed robbery and drug trafficking. His total offense level was 37 and his criminal history category was VI, yielding a Guidelines imprisonment range of 360 months to life. Shields objected to the drug quantity calculation and two-level deadly weapon enhancement included in his presentence report (PSR). Because these objections were immaterial to Shields's status as a career offender, however, the District Court did not rule on them. Although he made no credible argument to support the notion that he did not qualify as a career offender, Shields's counsel perfunctorily objected to that classification. Moreover, although Shields said nothing about a downward departure at sentencing, he did seek one in his written objections to the PSR, claiming that his criminal history was over-represented. Finally, Shields argued that a within-Guidelines sentence would create a significant disparity between his sentence and those imposed on his co-conspirators, Byrd and Shope.

Finding that Shields had "five felony convictions, four of which involve possession of a firearm," the District Court designated Shields a career offender. The Court also held that the Guidelines range was reasonable, finding a likelihood of recidivism in light of Shields's many previous failures to change his ways. Accordingly, the Court sentenced Shields to the bottom of the Guidelines range (360 months).

## II

On appeal, Shields claims the District Court: (1) erred in joining his case with Byrd's; (2) abused its discretion when it improperly vouched for a government witness;

5

and (3) committed procedural error by refusing to grant a downward departure under USSG § 4A1.3 and by failing to meaningfully consider the 18 U.S.C. § 3553(a) factors. Byrd claims the District Court: (1) improperly vouched for a government witness; and (2) refused to acknowledge his argument in support of a downward variance.

We have jurisdiction over these appeals pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1). We exercise plenary review over the District Court's joinder of the defendants under Federal Rule of Criminal Procedure 8(b), *United States v. Thornton*, 1 F.3d 149, 152 (3d Cir. 1993), and review the Court's decision not to sever for abuse of discretion. *United States v. Quintero*, 38 F.3d 1317, 1339 (3d Cir. 1994). We review the District Court's supplemental jury instruction for abuse of discretion. *United States v. Santos*, 932 F.2d 244, 247 (3d Cir. 1991). Finally, we review the District Court's judgments of sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Tomko*, 562 F.3d 558, 565 (3d Cir. 2009).

## A

Shields claims his case was improperly joined with Byrd's because the two "were never involved in any acts or transactions together" and "were rarely in the same place at the same time." Shields's Br. at 12. We are unpersuaded. An indictment "may charge two or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." FED. R. CRIM. P. 8(b). Here, there is no doubt that Shields and Byrd were involved in the "same series of acts or transactions," including packaging and storing

6

cocaine base and heroin at a local hotel, supervising Shope's drug business and controlling the proceeds of each transaction. Accordingly, joinder was proper.

The District Court may order severance to avoid the "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Reyeros*, 537 F.3d 270, 287 (3d Cir. 2008). To warrant reversal, Shields must demonstrate that the joint trial resulted in "clear and substantial prejudice." *Id.* at 286. Shields claims several witnesses—including Rupert, Heidle, and Scott, who purchased drugs directly from Shope and Byrd—would not have testified at Shields's trial had the defendants been tried separately. Shields alleges that their testimony "painted him with the same broad brush of bad acts" as Byrd, thus confusing and misleading the jury.

We reject Shields's argument because it runs headlong into our statement that "a defendant is not entitled to a severance merely because evidence against a co-defendant is more damaging than the evidence against the moving party." *United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005). Rather, the relevant inquiry is "whether the jury will be able to compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility." *Id.* (citing *United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005)).

Here, the jury could compartmentalize the evidence presented at trial in a number of ways, not the least of which was to note that Shields was primarily responsible for all drug transactions that took place during the month of May. Indeed, the District Court

7

specifically instructed the jury to "separately consider the evidence relating to each offense." App. 25. "We presume that the jury followed the instructions, and thus we regard the instructions as persuasive evidence that refusals to sever did not prejudice the defendants." *Lore*, 430 F.3d at 205 (internal citations and quotation marks omitted). The fact that Shields was convicted of all drug charges but acquitted of the firearm charge indicates further that the District Court did not err when it denied Shields's severance motion.

B

Both Shields and Byrd claim the District Court abused its discretion when it "vouched" for a Government witness by describing that witness's testimony during a supplemental jury instruction. Shields and Byrd raised a similar objection at trial when counsel argued that the jury would interpret the Court's instruction as an implicit endorsement of the Government's position that the Defendants intended to distribute the large quantity of drugs found in their possession. Although the two arguments are not identical, they both raise concerns regarding the effect of judicial advocacy on a jury's verdict.

In *United States v. Wilensky*, 757 F.2d 594 (3d Cir. 1985), we cautioned that "the trial judge must not abandon his proper role and assume that of an advocate." *Id.* at 597 (internal citation and quotation marks omitted). However, "a few isolated, allegedly prejudicial comments by the trial judge are not sufficient to warrant a reversal." *Id.* at 598. Rather, "a balancing process must be employed to determine whether the trial

8

judge's comments have pervaded the overall fairness of the proceeding."  *Id*.

Considering the supplemental instruction as a whole, we hold that the District Court's charge did not constitute reversible error.  The District Court described the Government witness's testimony in a conditional manner, stating that the jury "*might* be able to conclude" that quantity is indicative of intent, and that this analysis "depend[s] on other circumstances."  App. 80-82 (emphasis added).  Thus, although the instruction permits the jury to link drug quantity to intent, it does not require it to do so.  *Cf*., *United States v. Rockwell*, 781 F.2d 985 (3d Cir. 1986) (holding that the district court "improperly invaded the province of the jury" when it directed the jury not to make any findings regarding the credibility of a witness).

Moreover, the District Court specifically instructed the jury not to accord greater weight to the testimony of law enforcement officers than to other witnesses, and to "follow [their] own judgment" regarding the evidence even if that judgment "differs from . . . anything that I might say."  Given the clarity of these instructions, we presume the jury understood their role as judges of the facts and were not unduly influenced by the Court's instruction.  *See also Santos*, 757 F.3d at 253 (finding no abuse of discretion when the district court gave a prejudicial instruction on defendant's weak claim of duress, followed by a curative instruction which "reminded the jury that it was solely the jury's responsibility to determine the facts").

For these reasons, we hold that the District Court's supplemental jury instruction was not an abuse of discretion.

9

C

Shields claims the District Court committed a number of procedural errors at sentencing, including: (1) mischaracterizing him as a career offender; (2) refusing to grant a downward departure to reflect a lack of violence in his criminal history; and (3) failing to adequately consider the § 3553(a) factors.[2]

We review *de novo* the District Court's legal determination that Shields is a career offender.[3] Shields argues that his armed robbery conviction should not qualify as a "crime of violence" under USSG § 4B1.1(a), because his involvement in the commission of the crime was minimal and he did not use a firearm in furtherance of the robbery. A "crime of violence" is defined as an offense under federal, state, or local law punishable by at least one year in prison which either "has as an element the use, attempted use, or threatened use of physical force against another" or "involves conduct that presents a serious potential risk of physical injury to another." *See* USSG § 4B1.2(a)(1)-(2). Shields's conviction for "robbery with a deadly weapon" necessarily "involves conduct that presents a serious potential risk of physical injury to another." Thus, the District Court did not err in finding that Shields's conviction for armed robbery qualifies as a

---

[2] Shields also claims the District Court erred by "increas[ing] his sentencing guidelines by two points" based on his possession of a dangerous weapon. This is factually incorrect because the District Court declined to resolve this dispute since the enhancement would have no effect on Shields's final Guidelines range.

[3] Under USSG § 4B1.1(a), a defendant is a career offender if he: (1) was at least eighteen years old when the offense occurred; (2) the conviction is for a crime of violence or involves a controlled substance; and (3) has at least two prior convictions for felonies involving a crime of violence or a controlled substance.

"crime of violence" under USSG § 4B1.2.

Assuming that his career offender status was proper, Shields also requested, in his written objection to the PSR, a downward departure pursuant to USSG § 4A1.3(b)(1). According to the policy statement for that Guideline, a sentencing court may depart downward one criminal history category if a career offender's criminal history category "substantially over-represents the seriousness of [his] criminal history or the likelihood that [he] will commit other crimes." USSG § 4A1.3(b). We cannot review a sentencing court's refusal to grant a downward departure "unless the record reflects that the district court was not aware of or did not understand its discretion to make such a departure." *United States v. Grier*, 585 F.3d 138, 141 (3d Cir. 2009) (quoting *United States v. Puckett*, 422 F.3d 340, 344-45 (6th Cir. 2005)).

Here, the District Court did not expressly rule on Shields's request for a downward departure. Under limited circumstances, however, we may "infer that a sentencing court exercised its discretion not to depart." *United States v. Jackson*, 467 F.3d 834, 839 (3d Cir. 2006) (inferring that a district court must have recognized the "*possibility* of departure," because counsel for the government argued at the sentencing hearing that a departure would be inappropriate given the facts of the case) (emphasis in original). During its sentencing colloquy, the District Court noted that Shields had committed five felony offenses, four of which involved possession of a firearm. The Court also noted that Shields's prior conviction for drug trafficking had not deterred him from committing

11

the instant crime.  Under these circumstances, we too infer that the Court rejected Shields's argument that his criminal history was overrepresented.

Shields also claims the District Court did not give "meaningful consideration to the § 3553(a) factors."  *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006).  We disagree.  Prior to imposing a bottom-of-the-Guidelines sentence, the District Court considered the seriousness of Shields's offense, his "past uses of weapons," his failure to take advantage of numerous "opportunities to change his life and attitude," and the need to "protect[] . . . the public."  The District Court thus adequately considered the § 3553(a) factors.

## D

Like Shields, Byrd challenges his sentence, claiming that the District Court erred in failing to respond to his request for a downward variance based on the crack/powder disparity.  The Government claims the District Court "acknowledged its discretion to vary downward based upon a mere disagreement with the guideline range."  Government's Br. at 29.  But our review of the record reveals no such acknowledgment and the Government does not cite to any.

In *United States v. Sevilla*, 541 F.3d 226 (3d Cir. 2008), we vacated a sentence near the bottom of the Guidelines when the court failed to address the defendant's request for a downward variance to account for his difficult childhood and the crack/powder disparity.  *Id.* at 232.  Likewise, the District Court's failure to respond to Byrd's colorable argument regarding the crack/powder disparity was procedural error that requires remand.

12

Of course, we express no opinion regarding the ultimate sentence; we merely require that on remand the District Court address Byrd's argument that he deserves a downward variance in light of the crack/powder disparity.

III

For all the foregoing reasons, we will affirm the District Court's judgments of conviction against Byrd and Shields. We will also affirm Shields's judgment of sentence, but will vacate Byrd's judgment of sentence and remand for resentencing consistent with this opinion.