**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3333
_____

UNITED STATES OF AMERICA

v.

CHRISTOPHER LAMONT STIMPSON, JR.,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 5-20-cv-00413-001)
District Judge: Honorable Edward G. Smith
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 27, 2024

Before: KRAUSE, RESTREPO, and MATEY, *Circuit Judges*

(Filed: August 29, 2024)
_____

Michael N. Huff
1333 Race Street

Philadelphia, PA 19107
   *Counsel for Appellant*

Jacqueline C. Romero
Robert A. Zauzmer
Karen L. Grigsby
Mark S. Miller
U.S. ATTORNEY'S OFFICE
615 Chestnut Street, Ste. 1250
Philadelphia, PA 19106
   *Counsel for Appellee*

————————

OPINION OF THE COURT

————————

RESTREPO, *Circuit Judge*.

Our criminal legal system bears the heavy burden of trying to right wrongs. Acknowledging that this process is itself sometimes subject to error, a person's right to appeal their conviction and sentence is critical to ensuring outcomes that are both correct as a matter of law and fair to the individual in question. Christopher Lamont Stimpson, Jr., exercised this right by asking us, pursuant to 18 U.S.C. § 3742(a), to review the District Court's validation of warrants to obtain evidence never used against him at trial and its application of USSG §2B3.1(b)(2)(D) at sentencing. While Mr. Stimpson is entitled to raise these issues, they cannot provide him with the recourse he seeks. We will affirm his conviction and sentence as follows.

## I. The Frenchie Heist

This case begins in 2020 with an Amish family in Lancaster County, Pennsylvania. The Stoltzfuses—Benuel, Mary, and their 16-year-old daughter—bred and sold puppies to supplement the income Mr. Stoltzfus earned at his manufacturing job. In October 2020, with the help of a manufacturing colleague's computer and Internet access, Mr. Stoltzfus listed five blue merle French bulldog puppies ("the Frenchies") for sale on Lancasterpuppies.com.

Mr. Stimpson—then 22 years old—reached Mr. Stoltzfus by telephone to express interest in purchasing the Frenchies for resale in North Carolina. The former shared references with the latter and, after several telephone conversations, the two agreed on a $23,500 cash price for the five pups. They also agreed that Mr. Stimpson would pick Mr. Stoltzfus up at his manufacturing job and take him home to inspect the Frenchies before moving forward with the deal.

The sale day came and Mr. Stimpson, driven by his associate Wilbert Artis, collected Mr. Stoltzfus at his job and drove him home. After handling and photographing the Frenchies, Mr. Stimpson agreed to the transaction and instructed Mr. Artis to retrieve the cash from their vehicle. Mr. Stoltzfus began counting the money at the family's kitchen table while Mr. Stimpson observed. The puppies (kept in a white laundry basket), Mrs. Stoltzfus, and Mr. Artis, meanwhile, remained in the family's living room.

Things went awry when Mr. Artis then took the Frenchies and their paperwork to the vehicle before the money

count was complete. Mrs. Stoltzfus, concerned by this development but fearful of raising the alarm in a language comprehensible to Mr. Stimpson, went into the kitchen and told her family what happened in Pennsylvania Dutch.[1] Her daughter responded, "*Geh ruff die Leit,*" or, "Go call the people," which her mother understood as an instruction to call the police. Rather than doing so, Mrs. Stoltzfus remained where she was. Suddenly, Mr. Stimpson grabbed the cash and attempted to leave the house. Mr. Stoltzfus seized him and knocked the money from his hands, scattering it all over the kitchen floor. A struggle ensued that also involved Mrs. Stoltzfus. Their daughter fled the home, ran up the hill to a shed that contained the family's telephone, and called the police.

To end the kitchen melee, Mr. Stimpson allegedly pulled out a small black handgun, pointed it at Mr. Stoltzfus, and ordered the couple to collect the fallen bills. While they were doing so, Mr. Stimpson took the remaining uncounted stacks of money from the kitchen table and fled the house. Mr. Artis drove the two men, five Frenchies, their paperwork, and most of the cash they came with back to North Carolina. The Stoltzfuses, meanwhile, were left with $4,140 in cash and no puppies.

After the robbery, Mr. Stoltzfus spoke with a man who had also expressed interest in the Frenchies and asked him to help track them down. The man—Donte Knox—found a public

---

[1] The language, also known as Pennsylvania German, exists in America thanks to a sizeable migration of German speakers to the then-colony of Pennsylvania during the seventeenth and eighteenth centuries. Today, it is spoken by some 300,000 Americans.

4

Instagram account called YoungBossStimp that appeared to contain pictures of the stolen puppies. That Instagram account linked to two others, EliteBodyFrenchies and EliteBodyKennels, on which Mr. Knox saw photos and a video of the Frenchies. He compiled the images, including a video depicting the laundry basket-bound puppies in which Mr. Stoltzfus could be heard speaking in the background. Mr. Knox emailed those photos and that video to Mr. Stoltzfus's manufacturing colleague, who then forwarded them to Sergeant Kenneth Lockhart at the Ephrata Police Department.

However, after learning that Mr. Knox had located these images but before receiving the forwarded email, Sergeant Lockhart scrolled Instagram for himself. He found the EliteBodyFrenchies and EliteBodyKennels accounts, both public at the time, and observed the video of the puppies at the Stoltzfus home. He showed the video and photographs he found to Mr. Stoltzfus, who used them to identify one of the men as Mr. Stimpson. Law enforcement connected a few more dots and ultimately arrested Mr. Stimpson in December 2020, which led to a jury conviction for Hobbs Act robbery, 18 U.S.C. §§ 1951 and 2, and interstate transportation of stolen goods, 18 U.S.C. §§ 2314 and 2, in March 2022. Mr. Stimpson timely appealed, arguing that the District Court erred both by not granting his suppression motion and by imposing the §2B3.1(b)(2)(D) enhancement at sentencing.[2]

The Frenchies, meanwhile, were ultimately returned to the Stoltzfuses unharmed and sold elsewhere.

---

[2] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction here under both 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II. The Suppression Motion

Before trial, Mr. Stimpson filed a motion to suppress evidence obtained from search warrants executed on four Facebook and three Instagram accounts, arguing that the warrants were overbroad and unsupported by probable cause. The District Court held a hearing but later denied his request, satisfied that the warrants met the Fourth Amendment's probable cause and particularity requirements. Then, prior to trial, the government clarified that it would not use any photos or videos obtained during the search of the social media platforms. Rather, it would only seek admission of the Frenchie content that had been posted on Mr. Stimpson's publicly available Instagram accounts, but which the government had obtained legally and without warrants from two private citizens (Mr. Knox and Mr. Stoltzfus's manufacturing colleague) and Sergeant Lockhart. At trial the government did just that, and a jury ultimately convicted Mr. Stimpson without seeing any evidence obtained by the warrants in question.

And yet, on appeal, Mr. Stimpson seeks to relitigate his suppression motion. While he is certainly entitled to raise these arguments, we need not indulge them with a substantive response, as they ignore a glaringly dispositive concept: mootness.[3] Just as "there was no need [for the District Court] to [address the merits of the suppression motion] because the point had become moot once the [g]overnment agreed [before trial] not to use any of the documents . . . at trial," *United States*

---

[3] We do not dismiss Mr. Stimpson's appeal for lack of jurisdiction and accordingly use "moot" colloquially, not in an Article III sense.

*v. Lingala*, 91 F.4th 685, 694 (3d Cir. 2024), so too is there no need for us to review the District Court's substantive decision on suppression here. *See also United States v. Trinh*, 665 F.3d 1, 17 (1st Cir. 2011) ("The record clearly shows that no evidence concerning the leaf fragment was in fact introduced at trial, making any argument in favor of his motion to suppress . . . now moot."); *United States v. Stearn*, 597 F.3d 540, 544 n.3 (3d Cir. 2010) (mooting part of government's appeal because search warrant produced no evidence); *United States v. Arias-Villanueva*, 998 F.2d 1491, 1502 (9th Cir. 1993) ("[T]his issue is moot because the government did not introduce any evidence seized during that search at trial.") *rev'd on other grounds*, 472 F.3d 1102 (9th Cir. 2007). Put otherwise, we have nothing to exclude and therefore no remedy to grant; what the warrants turned up the parties agree was never admitted into evidence at trial. Therefore, we consider Mr. Stimpson's challenge moot.

### III. The §2B3.1(b)(2)(D) Enhancement[4]

The parties also contested the application of an enhancement under USSG §2B3.1(b)(2) at Mr. Stimpson's sentencing hearing. The District Court ultimately applied §2B3.1(b)(2)(D), raising Mr. Stimpson's offense level by four points to 25 and producing an advisory Guidelines range of 70–

---

[4] Under the advisory Sentencing Guidelines, district courts make factual findings by a preponderance of the evidence, and we review those findings for clear error. *United States v. Grier*, 475 F.3d 556, 561 (3d Cir. 2007) (en banc). We exercise plenary review over a district court's interpretation of the Guidelines. *Id.* at 570.

87 months.[5] Now on appeal, Mr. Stimpson challenges only the sufficiency of the evidence, maintaining that the government failed to prove by a preponderance that Mr. Stimpson possessed a dangerous weapon. We cannot agree.

The preponderance of the evidence standard simply asks: "Is it more likely that something happened than not?" *United States v. Santos,* 932 F.2d 244, 248 (3d Cir. 1991); *see also id.* at 252 (adopting definition). The Sentencing Guidelines, meanwhile, instruct district courts to enhance the base offense level for robbery by four levels "if a dangerous weapon was otherwise used" during the crime. §2B3.1(b)(2)(D). Read together, the District Court was required to ask whether the evidence that Mr. Stimpson "otherwise used" a "dangerous weapon" outweighed the evidence against it. *Id.* We discern no clear error in its answer.

Mr. Stimpson maintains that the District Court erred in its weighing of the evidence because there were numerous inconsistencies between the victims' testimony and their reports to law enforcement, there were inconsistencies among the reports themselves, and two of the victims made statements

---

[5] The District Court placed Mr. Stimpson in Criminal History Category III based on his four prior convictions for marijuana possession. Notably, this sentencing pre-dated Amendment 821 to the Guidelines, effective November 1, 2023, which specifies in the commentary to §4A1.3 that "[a] downward departure . . . may be warranted . . . [if the individual] received criminal history points from a sentence for possession of marihuana for personal use, without an intent to sell or distribute it to another person." §4A1.3, comment. (n.3(A)(ii)).

evidencing racial bias. But Mr. and Mrs. Stoltzfus's testimony at trial—the most direct opportunity for the District Court to weigh their credibility—was very similar and provided considerable support for the enhancement's application. Mr. Stoltzfus shared that Mr. Stimpson "pulled a gun on [him]," that it was "a small black handgun," that he was "pointing it at [him]," and that he was holding the gun "[k]ind of in the air in his hand" and that it was pointed "[t]owards [him]." App'x 348–49. Mrs. Stoltzfus, meanwhile, testified that Mr. Stimpson "pulled a gun" and "threatened" them, and described a "[b]lack," "small pistol type of a gun" that Mr. Stimpson "aimed [] at [them]" while demanding that they pick up the money. App'x 488. Of course, "the preponderance standard is not toothless," and it is indeed "the district court's duty to ensure that the [g]overnment carries this burden by presenting reliable and specific evidence." *United States v. Roman*, 121 F.3d 136, 141 (3d Cir. 1997) (quoting *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995)). But on this record, we cannot say with the certainty required on clear error review that the District Court incorrectly weighed the evidence in applying §2B3.1(b)(2)(D).

## IV.

For the aforementioned reasons, we will affirm Mr. Stimpson's conviction and sentence.