George C. RILEY and Lester Riley

v.

George F. GOODMAN, Warden and the State of New Jersey.

George C. Riley, Appellant in 14105.

Lester Riley, Appellant in 14106.

Nos. 14105, 14106.

United States Court of Appeals
Third Circuit.

Argued Feb. 19, 1963.

April 1, 1963.

Harry R. Hill, Jr., Trenton, N. J., for appellants.

John W. Applegate, Asst. County Pros., Freehold, N. J. (Vincent P. Keuper, Monmouth County Pros., Freehold, N. J., on the brief), for appellee.

Before McLAUGHLIN and GANEY, Circuit Judges, and COHEN, District Judge.

COHEN, District Judge.

The sole issue in this criminal case is whether appellants were deprived of a fair trial under the due process clause of the Fourteenth Amendment as a result of the trial judge's comments and. participation in the interrogation of witnesses.

Appellants are presently confined in the New Jersey State Prison pursuant to sentences imposed upon jury convictions of the crimes of rape on a 17 year old girl and atrocious assault and battery on her companion—a 21 year old boy. After

exhaustion of state remedies and denial of certiorari by the United States Supreme Court, applications, under 28 U.S. C. § 2254, were made to the District Court of New Jersey, which were denied. The present appeal followed.

At trial the State's proofs were that: On February 26, 1957, about 10:30 P.M., the victim and her escort were seated in a car, parked in a secluded area, when four men suddenly appeared on the scene, screaming; the doors of the car were flung open; the escort was clubbed with a stick; his keys to the car were taken; and while two of these men stood guard over the young man the other two, appellants, removed and dragged the young lady over to their automobile, threw a jacket over her head, beat her, threatened her with her life, and raped her. Thereafter, she was replaced in her escort's car, the key was returned, and both were threatened with further bodily harm if they revealed the incident. Despite such threat, the young man made immediate contact with the local police; the parents of the girl were notified; and medical attention was rendered to both victims. The medical testimony revealed ample evidence of rape and assault to each.

During the course of the trial the judge intervened and participated quite extensively in the interrogation of witnesses, principally the victims. Both required prodding and admonishments on numerous occasions to "speak up" [1] and "calm down".[2] On many occasions leading questions were asked by the judge.[3]

1. "Q. You had been there before?
"A. (The witness nods his head.)
"THE COURT: Speak up. I can't hear you, what you are saying. You know, it isn't a disgrace to go out there and pet, if you were out there petting. Why don't you speak up and tell us what you were out there for? That has been going on since time immemorial. Were you out there petting? That is what he wants to know."

2. "Q. Yes.
"Q. Well, it never happened to me before.
"Q. Of course. We understand that. We understand that.
"A. And I am trying to tell you.
"Q. All right. Go ahead. Now, calm down."

3. "Q. Just ordinary panties. Can you tell us what else occurred?
"A. Well, I dazed out.
"Q. What?
"A. Then I just blacked out.
"Q. You don't know anything else then?
"A. Then I felt someone hitting me again.
"Q. Hitting you?
"A. Yes.
"Q. Where?
"A. Across my face and my head, and my head hit the back of the door.
"Q. Did one of these men get off and another one get on?
"A. Yes.
"Q. Do you remember that much?
"A. Yes, sir.

"Q. Do you remember anything being done to you when either one or both of these men were on you?
"A. Yes, sir.
"Q. What?
"A. I was being raped.
"Q. What do you mean by raped? You mean someone was having intercourse with you?
"A. Yes.
"Q. Do you know what intercourse is?
"A. Yes, sir.
"Q. You are sure that both of these men raped you.
"A. Yes.
"Q. Both of these men had intercourse with you?
"A. Yes, sir.
"MR. WILLIAMS: Your Honor, at this time I would like to take an objection to that whole series of questions.
"THE COURT: You may have your objection, sir.
* * * * * * * *
"Q. You say you felt a part of their body in your body?
"A. Yes.
"Q. Inside of your body?
"A. Yes.
"Q. That is what you mean? Are you talking about the genital organ of a male?
"A. Yes.
"Q. You are a high school student. You are a senior?
"A. Yes.
"Q. You know what the genital organs are?
"A. Yes, sir.
"THE COURT: All right."

Appellants maintain that the trial judge's excessive and improper intrusion exceeded the bounds of judicial propriety and deprived them of fundamental safeguards guaranteed in the due process clause.

There is an abundance of authority establishing the conduct of a trial judge. Certain general standards are prescribed; however, no absolute, rigid rule exists. Each case must be viewed in its own setting. The pattern of due process is picked out of the facts and circumstances of each case. See Brock v. North Carolina, 344 U.S. 424, 427, 73 S.Ct. 349, 97 L.Ed. 456 (1953).

Keeping these salutary principles in mind, we examine the challenged propriety of the trial judge's participation. At the outset, it is obvious that the Court was confronted with a tense, sensitive, and difficult situation. Considerable and understandable reluctance was exhibited by both victims in revealing the appalling circumstances of their humiliating and harrowing experience. Constant reassurance by the Court was required in the continuation of a line of questioning which counsel had initiated.[4] The atmosphere of the courtroom was charged and fraught with tension.[5] Nevertheless, the judge was ever mindful of the constitutional rights of the appellants.[6] The jury was instructed that the case was important to both appellants as well as to the State of New Jersey.

We have long abandoned the adversary system of litigation which regards opposing lawyers as players and the judge as a mere umpire whose only duty is to determine whether infractions of the rules of the game have been committed. See 3 Wigmore, Evidence (1940 ed.), § 784. A trial is not a contest but a search for the truth so that justice may properly be administered. For the purpose of eliciting the germane facts, a judge may on his own initiative and within his sound discretion interrogate witnesses. 3 Wigmore, supra; Annotation, 11 A.L.R. 1172 (1933); 53 Am.Jur., Trial, § 75. In New Jersey, as elsewhere,

4. "MR. LAUTMAN: Can you tell us any better than that what they did? What was happening to you that never happened before?
"THE COURT: Collect yourself, will you?
"THE WITNESS: Yes, sir.
"THE COURT: Just relax. Sit back in the chair, if you can. That's right. Just relax. Lean back. That's right. Now, relax, and you tell us what was happening to you, if you know. You say one of these men was on top of you; is that right?
"THE WITNESS: Yes, and one was at my head.
"THE COURT: What was happening to you, if anything, when you say they were having intercourse?
"THE WITNESS: I don't know how to say it.
"THE COURT: Well, you say it any way that you know how to say it. It is perfectly all right, and the quicker you tell us all about it, I am sure the quicker you will get off that chair. Just what do you mean by being raped and what do you mean by having intercourse?
"THE WITNESS: It is just what it is."

5. "Q. You mean of your body?
"A. Yes, sir.
"A WOMAN: We can't go on like this.
"THE COURT: Take her out, will you please?
"THE WOMAN: No. I want to stay here.
"THE COURT: You will have to be quiet, Madam, if you are going to stay here."

6. "Q. Well, what is being done, if you know, when the act of intercourse is taking place? You see, this is very important. It is important to these two men. It is equally important to you and to the State, too. It is very important and therefore you must tell us and you must explain to us so that we will understand that you understand what the word intercourse means, what is being done, if anything, physically being done to you, if anything.
"A. Well—
"Q. Yes.
"A. Well, it never happened to me before.
"Q. Of course. We understand that. We understand that.
"A. And I am trying to tell you.
"Q. All right. Go ahead. Now, calm down."

leading questions are within a court's discretion, especially in prosecutions for sex offenses where the delicate nature of the details of the crime would otherwise prevent the witness from making a full disclosure. In our federal system the trial judge has the duty to discover the truth, elicit material facts, clarify testimony, and expedite the trial as much as possible. United States v. Brandt, 196 F.2d 653 (2d Cir.,1952).

An excerpt from the opinion of the New Jersey Supreme Court, unanimously affirming the convictions, State v. Riley, 28 N.J. 188, 203, 145 A.2d 601, 609 (1958), is singularly apt:

"We think the circumstances of the instant case compelled the trial judge, in the interests of safeguarding the proper administration of criminal justice, to make liberal use of his prerogative to question the complaining witness. She was a young girl who had undergone a vile experience which will probably stigmatize the rest of her life. She was anguished and sorely distressed by the necessity of having to relate the very minutiae of the obscenities forced upon her. The reassurance of the trial judge was required to enable her to continue to the bitter, painful end of her story. Experience shows that in cases involving sex offenses the inherent dignity and authority of the robed judge can clothe intimate and personal questions with a sense of decency and propriety which relieves to some degree the female witness' embarrassment and permits her full story to be told in a lucid fashion. This is peculiarly so in the instant case."

▮ Improper conduct of a trial judge must be inimical and partisan, clearly evident and prejudicial. In each case there must be something more to justify a retrial than a mere suspicion. It must appear plain and clear. Kowalsky v. United States, 290 F.2d 161 (5th Cir.,1961). Our study of the entire record leads us inescapably to the conclusion that it is barren of any implication of prejudice initiated by the trial judge. There was nothing in his conduct which could legitimately be classified as violative of the due process clause of the Fourteenth Amendment.

The order of the District Court will be affirmed.