**UNITED STATES of America, Appellee,**

v.

**Kerry David WILENSKY, Appellant.**

**No. 84–5404.**

United States Court of Appeals,
Third Circuit.

Argued Jan. 14, 1985.

Decided March 21, 1985.

Richard A. Sharpstein (argued), Janice Burton Sharpstein, Sharpstein & Sharpstein, P.A., Miami, Fla., for appellant.

Patty Merkamp Stemler, Dept. of Justice, Washington, D.C. (argued), W. Hunt Dumont, U.S. Atty., Jonathan Feld, Asst. U.S. Atty., Dist. of N.J., Newark, N.J., for appellee.

Before ADAMS and WEIS, Circuit Judges, and HARRIS, District Judge.*

## OPINION OF THE COURT

OREN HARRIS, District Judge.

Defendant Kerry David Wilensky appeals his convictions on three counts of obstruction of justice.[1] Wilensky raises two points on appeal, first, whether the trial judge's conduct deprived him of his Sixth Amendment right to effective assistance of counsel and his Fourteenth Amendment right to a fair trial, and second, whether the trial judge erred in denying defendant's Motion to Disqualify and Motion for Mistrial.

After a careful and thorough review of the trial transcript, we conclude that the trial judge's conduct, while approaching the level of prejudicial error, did not rise to such level as to warrant a reversal of the convictions. The evidence adduced at trial by the government overwhelmingly supports the jury's verdicts of guilty on each of the three counts charged in the indictment. We also find that the trial court did not abuse its discretion in denying Wilensky's Motion to Disqualify and Motion for Mistrial. Therefore, we affirm.

## I. FACTS

Wilensky, an attorney admitted to practice before the New Jersey Bar, was retained as counsel for Thomas Jerry Stewart by third parties after Stewart had been tried and convicted on violations of Federal Narcotics Laws, i.e., importation of marijuana. Wilensky had visited Stewart prior to Stewart's trial while Stewart was being held at the Metropolitan Correctional Center in New York.[2] During this meeting Wilensky informed Stewart that "his bosses" had not forgotten him and that they would provide for his financial needs. Stewart testified at length concerning an "insurance" program which the bosses provided for incarcerated employees. Under the program the employee could expect financial assistance from the employer for his family and self through the period of incarceration in exchange for that person's loyalty.

Following Stewart's conviction, a federal grand jury investigation was commenced, probing into the upper tier of the drug operation in which Stewart had been working. The government sought the cooperation and testimony of Stewart in this investigation. Wilensky advised the government that he was representing Stewart and that Stewart had elected to not cooperate in the investigation. However, Stewart, without Wilensky's knowledge, informed DEA agents that he desired to testify before the grand jury.

Stewart inquired of Wilensky as to when his family would receive the money which had been promised him. Wilensky arranged for the payments to commence, with the money being paid to Stewart's wife by money order. Wilensky stated to

---

* Honorable Oren Harris, United States District Courts for the Eastern and Western Districts of Arkansas, sitting by designation.

1. A grand jury returned a three count indictment against Wilensky. Count I charged conspiracy to influence, obstruct and impede the due administration of justice in violation of 18 U.S.C. §§ 371, 1503. Count II charged knowing, willful and corrupt endeavor to influence, obstruct and impede the due administration of justice by the paying of money to and for the wife of a witness, Thomas Jerry Stewart, in exchange for Stewart's agreement to withhold information concerning a matter being investigated by a federal grand jury in violation of 18 U.S.C. § 1503. Count III charged a knowing and willful endeavor by means of bribery to obstruct, delay and prevent the communication of information by Thomas Jerry Stewart relating to criminal violation to special agents of the Drug Enforcement Administration, while the agents were conducting said investigation, in violation of 18 U.S.C. § 1510. Wilensky was convicted on each of the three counts and sentenced to a term of incarceration on the first and second counts and sentenced to supervised probation to commence at the completion of the incarceration on the third count.

2. However, Wilensky did not make contact with Stewart through the course of Stewart's trial on the narcotics violations. It was only after the commencement of a grand jury investigation that Wilensky began to render legal assistance to Stewart.

Stewart that if he testified "six or seven real nice people will go down the tubes." Stewart, at Wilensky's insistence, signed a statement to the effect that it was solely Stewart's decision to not testify.

During the trial the government introduced into evidence a number of audio tapes containing various conversations between Stewart, his wife, Wilensky and DEA agent Roy Clagg who was posing as Mrs. Stewart's cousin, "Woody Woodson." The content of these taped conversations revolved around the continued payments to Mrs. Stewart, through "Woody" and the purpose for the payments.

Wilensky refused to make a lump sum payment of $50,000 as there would be no assurances that Stewart would not testify after receiving the payment. Wilensky's clients demanded weekly payments to ensure Stewart's silence. Clagg ("Woody") informed Wilensky that a sum of money had been received, to which Wilensky responded that he planned to visit Stewart the following day "to reassure him (Stewart) not to testify." During that visit Stewart informed Wilensky that he intended to testify unless he received more money. Wilensky understood this demand and stated he would request that Stewart be paid additional amounts. Soon thereafter, more money was received by "cousin Woody" for Mrs. Stewart from the bosses. These incidents led to Wilensky being indicted and, subsequently, convicted on the charges set out above.

## II. THE TRIAL JUDGE'S CONDUCT

Wilensky interjected the insanity defense at trial. The basis of his primary contention of error by the trial judge lies in the extensive examination of his expert witness, Dr. Arthur Stillman, a psychiatrist, by the trial judge.[3] Dr. Stillman testified that in his professional opinion the defendant was unable to appreciate the conse-

quences of his acts and to conform his conduct to the requirements of the law.

The trial judge often interrupted both the direct and cross examination of Dr. Stillman, with his questions delving deeply into the basis for the opinion and the extent of Wilensky's involvement with the usage of drugs. At various points the trial judge assumed the entire examination of the witness, posing numerous questions to Dr. Stillman in succession. (App. 192–195, T. 414–417; App. 196–201, T. 433–438).

■ While much of his questioning was directed at establishing facts pertinent to the defense, the trial judge intruded into the roles of the attorneys. However, the trial judge is not forbidden from participating in the conduct of a trial, as "a trial is not a contest but a search for the truth so that justice may be properly administered." *United States v. Beaty*, 722 F.2d 1090, 1093 (3rd Cir.1983), citing *Riley v. Goodman*, 315 F.2d 232, 234 (3rd Cir.1963).

■ In *Beaty* this Court was faced with similar allegations against the same trial judge. There this Court pointed out that the trial judge may elicit germane facts through interrogation of witnesses on his own initiative. See also, *Riley v. Goodman, supra*. The federal judge is more than a "mere moderator" or umpire in the proceeding. *See Geders v. United States*, 425 U.S. 80, 86–87, 96 S.Ct. 1330, 1334–1335, 47 L.Ed.2d 592 (1976); *United States v. Allsup*, 566 F.2d 68, 72 (9th Cir.1977); *Nordmann v. National Hotel Co.*, 425 F.2d 1103, 1109 (5th Cir.1970); *Warner v. Transamerica Insurance Co.*, 739 F.2d 1347, 1351 (8th Cir.1984). However, this role is not without limitations. The trial judge must not "abandon his proper role and assume that of an advocate...." *United States v. Beaty*, 722 F.2d at 1093; *United States v. Green*, 544 F.2d 138, 147

---

3. Wilensky also contends that the trial judge impermissibly interferred in the cross examination of Stewart and made comments which damaged the credibility of his trial counsel. However, the record reveals that the alleged comments were made almost exclusively out of

the presence of the jury during side bar conferences. Likewise, the questioning of Stewart was only an insignificant portion of the overall cross examination by defense counsel. At that the questions were primarily neutral in character and for clarification of the testimony.

(3rd Cir.1976), *cert. denied,* 430 U.S. 910, 97 S.Ct. 1185, 51 L.Ed.2d 588 (1977).

While this Court noted that no absolute, rigid rule has been espoused by the Courts concerning the limitations of the trial judge's participation in this manner, *United States v. Beaty,* 722 F.2d at 1093, the Eighth Circuit Court of Appeals has held that "[i]n order to reverse on grounds of excessive judicial intervention, the record must either 'disclose actual bias on the part of the trial judge (or) leave the reviewing court with an abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy or partiality.' (citation omitted)." *Warner v. Transamerica Insurance Co.,* 739 F.2d at 1351. This Court must view each case on its particular facts and circumstances in resolving allegations of denial of rights as contended here.

■ Although a few isolated, allegedly prejudicial comments by the trial judge are not sufficient to warrant a reversal, a balancing process must be employed to determine whether the trial judge's comments have pervaded the overall fairness of the proceeding. *United States v. Bland,* 697 F.2d 262, 265 (8th Cir.1983). There the Eighth Circuit Court of Appeals, Chief Judge Lay writing for that Court, stated "[w]e think the balance is adversely tipped against the defendant in a criminal trial where the judge's role loses its color of neutrality and tends to accentuate and emphasize the prosecution's case." *United States v. Bland,* 697 F.2d at 265 (footnote omitted).

■ When unfair judicial procedures result in a denial of due process, reversal is required. *Reserve Mining Co. v. Lord,* 529 F.2d 181 (8th Cir.1976). Good faith mistakes of judgment or misapplication of the proper rules of law by the district court are acts which do not reflect great bias on the part of the trial judge. Thus, their occurrence does not mandate reversal. *Reserve Mining Co. v. Lord,* 529 F.2d at 185. In *Reserve Mining Co.* the Eighth Circuit held that the trial judge, through extensive examination of witnesses, interspersed with comments on the evidence, by comments on the credibility of the defense witnesses, and by statements in regard to the ability, or lack thereof, of plaintiff's counsel, committed prejudicial error. Further, that Court ruled that "[a] judge best serves the administration of justice by remaining detached from the conflict between the parties." 529 F.2d at 186. By assuming the roles of judge, attorney, and witness in the same proceeding the trial judge abandons the impartiality with which he is charged.

■ As applied to the conduct of the trial judge in this case, it is apparent that he did overstep the bounds of prudent judicial conduct. Therefore, this Court concludes that the conduct of the trial judge was in error. However, having reviewed the record as a whole, this Court is also of the opinion that the error was not prejudicial to the defendant. The interventions by the trial judge were not so egregious as to justify reversal of the convictions.

Under the harmless error rule of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), certain errors that have "little, if any, likelihood of having changed the result of the trial" are deemed harmless, not requiring the automatic reversal of a conviction. 386 U.S. at 22, 87 S.Ct. at 827; *United States v. Hasting,* 461 U.S. 499, 508, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983).

The government presented overwhelming testimony which clearly supported the jury's verdicts of guilty on each of the three counts charged in the indictment. Furthermore, the record does not reveal, and Wilensky fails to point out any facts which convince this Court that there was actual bias on the part of the trial judge which was conveyed to the jury through the conduct of the trial. The questions and comments of the trial judge, while at times tending to prompt the inexperienced Assistant United States Attorney handling this matter, did not project an appearance of advocacy or partiality by the trial judge.

While Wilensky contends that his Sixth Amendment right to effective assistance of

counsel and his Fourteenth Amendment right to due process of law were violated in this proceeding, this Court concludes that, overall, he was afforded a fair trial. Under the Sixth and Fourteenth Amendments a defendant is guaranteed such rights. The record does not reflect and argument of Wilensky fails to persuade this Court that the conduct of the trial fell below the *Plimsoll* line of fairness or polluted the waters of justice. *See United States v. Singer,* 710 F.2d 431 (8th Cir.1983) (in banc), dissenting opinion, Henley, Senior Judge, 710 F.2d at 439. Furthermore, the right to a fair trial does not translate into the right to a perfect trial. *United States v. Robinson,* 635 F.2d 981 (2d Cir.1980). Although this Court believes that the better course would have been to refrain from examination of the witnesses except where absolutely necessary in the search for justice, the Court is not persuaded that the questions posed by the trial judge prejudiced Wilensky in this instance.

In *Beaty* this Court communicated its disapproval of the manner in which the trial judge intervenes in trials before him. There, this Court reversed the conviction of co-defendant Ballouz for this reason. This Court characterized the trial judge's conduct as "always troublesome." 722 F.2d at 1095. The judge's actions conveyed his skepticism about Ballouz's alibi defense to the jury. While the trial judge here thoroughly questioned the defendant's key witness, Dr. Stillman, the sole witness who might establish Wilensky's insanity defense, this Court fails to find that, as a whole, the questions were of such a character that the trial judge chilled the defense efforts.

### III. THE MOTION TO DISQUALIFY

Prior to the trial which resulted in his conviction, Wilensky had represented one of the defendants in a criminal action pending before Judge Stern, *United States v. Charles Liberto, et al.,* United States District Court, District of New Jersey, docket number 83–109. The *Liberto* case involved the narcotics distribution organization that Stewart had implicated in his grand jury testimony, and was specifically mentioned in count II of the indictment returned against Wilensky. In the *Liberto* case, Judge Stern, upon order of Chief Judge Fisher of the District of New Jersey, was removed as trial judge following the receipt of threats against his safety. Wilensky contends that this removal is sufficient to warrant his recusal in this matter.

Although these two criminal actions are indisputedly connected as each revolves around the narcotics importation investigation and trial, the offenses are significantly separate, with charges in each stemming from different facts and involving separate violations of the law.

■ The trial judge commented after the granting of a mistrial in the first trial on the defense strategy. He likewise made occasional reference to the development of the facts and the strong evidence of guilt which was being produced by the government in the second trial. Following the trial judge's remarks, counsel for Wilensky made motions for mistrial for personal bias, which motions were denied. However, the comments were made out of the presence of the jury, either at side bar conference or after the jury had been excused for a recess. It cannot be said that the comments cited by Wilensky prejudiced his right, as the jury was afforded no opportunity to be influenced by such conduct.

As previously noted the trial judge's conduct and comments throughout the course of the trial were not in conformity with that which is generally expected in a criminal trial. Such actions cannot be condoned by this Court. However, coupling the overwhelming evidence of guilt, the relatively evenhanded treatment of counsel and his reasonably fair and impartial ruling on evidentiary matters indicates that Wilensky was afforded his rights to a fair and impartial trial.

■■ The decision of whether to recuse from hearing a matter lies within the sound

discretion of the trial judge and this Court will not reverse a trial court's denial of a motion to disqualify or recuse unless the trial judge abuses his discretion. *United States v. Dalfonso*, 707 F.2d 757 (3rd Cir. 1983). This Court does not find that under the facts and circumstances of this case the trial judge abused his discretion.

■ Wilensky contends the trial judge was privy to extrajudicial information and knowledge which was sufficient to warrant disqualification for personal bias. The trial judge presided over the first trial in which the mistrial was granted due to governmental misconduct. Of course, he gained knowledge of the defense to be employed at trial. However, the fact the mistrial was granted does not require an automatic recusal upon retrial. Furthermore, the knowledge was gained while the trial judge was acting in his official judicial capacity. Therefore, the trial judge was not bound to recuse from the trial of the case. See *United States v. Kelley*, 712 F.2d 884, 889 (1st Cir.1983), citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).

Having reviewed the record in this proceeding and the record before this Court from the first trial, this Court concludes that Wilensky has failed to demonstrate that the alleged personal bias of the trial judge actually interferred with the conduct of the second trial. A trial judge will predictably reach conclusions on the evidence put before him. Nevertheless, such does not prevent him from affording the defendant a fair and impartial trial.

### IV. CONCLUSION

While this Court finds that the trial judge's conduct in this particular case was not reversible error, this holding is so limited by the facts in the case.

For the foregoing reasons, the jury verdicts of guilty and the denials of the motion for disqualification and the motions for mistrial are affirmed in all respects.