**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-2956

UNITED STATES OF AMERICA

v.

STEFON WILSON,

Appellant

On Appeal from the District Court
of the Virgin Islands
District Court  No. 3-04-cr-00154-010
United States District Judge: The Honorable James T. Giles

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 3, 2010

Before: SMITH, CHAGARES, and JORDAN, *Circuit Judges*

(Filed: May 13, 2010 )

OPINION

SMITH, *Circuit Judge*.

Stefon Wilson was an apparently minor player in a cocaine smuggling conspiracy.

He was charged and found guilty of conspiring to traffic cocaine through Cyril E. King

1

Airport in St. Thomas, U.S. Virgin Islands, in violation of 21 U.S.C. § 846. The District

Court sentenced Wilson to 151 months of imprisonment.[1] Wilson raises three issues in

this appeal.[2] He (1) challenges the sufficiency of the evidence supporting the conspiracy

charge, (2) challenges his sentence, and (3) accuses the District Court of engaging in

improper judicial intervention.

After reviewing the record, we conclude that Wilson's case should be remanded

for resentencing. *See United States v. Collado*, 975 F.2d 985, 995 (3d Cir. 1992);

U.S.S.G. § 1B1.3. The District Court held Wilson responsible for 30 kilograms of

cocaine seized by authorities on September 20, 2003, based on his knowledge and

occasional prior use of the Sunshine Office, an office located in the Cyril E. King Airport,

as a drug smuggling hub. Because Wilson's knowledge and occasional prior use of that

office were not, on this record, enough to hold him responsible for the September 20,

2003 cocaine smuggling attempt, the District Court abused its discretion in calculating his

offense level under the Sentencing Guidelines. Thus, we will remand his case for

resentencing.

I.

Wilson's challenge to the sufficiency of the evidence presented at trial is

---

[1] Because we write only for the parties, we will presume knowledge of the record.

[2] The District Court had jurisdiction under 18 U.S.C. § 3231 and 48 U.S.C. § 1612(a). We exercise appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

unavailing. In reviewing the sufficiency of the evidence, "all issues of credibility within the province of the jury must be viewed in the light most favorable to the government." *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990). We "must affirm the conviction[] if a rational trier of fact could have found the defendant[] guilty beyond a reasonable doubt and the conviction[] [is] supported by substantial evidence." *Id.*

The Government's evidence against Wilson was not particularly compelling. Nevertheless, it was sufficient to prove a conspiracy charge against him. The single allegation in the indictment involving Wilson stated that "[o]n August 24, 2004, [he] agreed to assist in transporting a shipment of cocaine through Cyril E. King Airport." The key evidence supporting this allegation was a taped conversation between Wilson and Danny Rawlins, an informant, that occurred on that date. In that conversation, Wilson explained how to smuggle cocaine through airport security and offered to assist in smuggling. In addition to this recorded conversation, Dion Brookes, the manager of the Sunshine Office, said that Wilson left bags with him on three occasions, Wilson took the bags through a back door that led to a ramp, and Wilson paid him $700 in exchange for using the Sunshine Office. Brookes did not specify when these events occurred. Another alleged co-conspirator, Brent Donovan, testified that in July of 2002 he saw Wilson drop off a bag from the mechanic shop at the baggage belt and that Mervin Dorival, the organizer of the conspiracy, retrieved the bag.

"To establish a conspiracy, the evidence must show that the alleged conspirators

3

shared a unity of purpose, an intent to achieve a common goal, and had an agreement to work together to achieve that goal." *United States v. Robinson*, 167 F.3d 824, 829 (3d Cir. 1999). The evidence supporting Wilson's involvement in the conspiracy was weak, but it is enough when viewed in the light most favorable to the Government. *See Gonzalez*, 918 F.2d at 1132. A rational jury, relying on the taped conversation and the anecdotal testimony from Brookes and Donovan connecting Wilson to the conspiracy, could have found Wilson guilty beyond a reasonable doubt. *See id.*[3]

## II.

Wilson contends that the District Court at sentencing erroneously held him responsible for cocaine to which he had no connection. "When reviewing the sentencing decisions of the district courts, we exercise plenary review over legal questions about the meaning of the [S]entencing [G]uidelines, but apply the deferential clearly erroneous standard to factual determinations underlying their application." *Collado*, 975 F.2d at 990 (internal quotation marks omitted). We review the District Court's "application of the Guidelines to the facts for abuse of discretion[.]" *United States v. Blackmon*, 557 F.3d 113, 118 (3d Cir. 2009).

At sentencing, the District Court, in calculating the applicable range under the Sentencing Guidelines, attributed to Wilson 30 kilograms of cocaine seized by authorities

---

[3] Wilson raises two additional, related arguments. He argues that there was a variance in the proof at trial and that he was prejudiced by being tried with multiple defendants. After reviewing the record, we are unpersuaded by these claims.

4

on September 20, 2003. *See* U.S.S.G. § 2D1.1(a)(5) (requiring sentencing court to ascertain amount of drugs to determine base offense level). In so doing, the District Court found by a preponderance of the evidence that: (1) the *modus operandi* of shipping cocaine at the time of September 20, 2003—the known, agreed-to method of operation for the conspiracy—was to ship cocaine in bags via the Sunshine Office; (2) the members of the conspiracy attempted to smuggle 30 kilograms of cocaine through Cyril E. King Airport on September 20, 2003; (3) the *modus operandi* of shipping cocaine changed after the September 20, 2003 seizure by the authorities; (4) because the *modus operandi* changed after September 20, 2003, when Brookes testified that Wilson brought bags to the Sunshine Office, Wilson must have done so before September 20, 2003; (5) there was no evidence concerning the amount of cocaine in the bags Wilson stored in the Sunshine Office; and (6) Wilson knew that others were using the Sunshine Office for cocaine smuggling.[4] In light of these facts, the District Court concluded that Wilson was part of

---

[4] The District Court stated:

> The Court finds that the amount attributable to Mr. Wilson is 30 kilograms, the 30 kilograms involved in transport to the airport . . . on the 20th of September of 2003.
>
> [T]he Court finds by a preponderance of the evidence . . . that the modus operandi at that time was to store bags in [the Sunshine] [O]ffice. And the specific evidence is that there was, there were two bags loaded onto an airplane or airplanes. One bag remained in [the Sunshine] [O]ffice, from which it was retrieved once Meleek Sylvester learned of the seizure of the two bags.

5

the conspiracy prior to September 20, 2003, and so it held him responsible for the 30 kilograms seized on that date.

Based on the record, we cannot conclude that the District Court's specific findings were clearly erroneous. Given the testimony of cooperating witness Meleek Sylvester that after the September 20, 2003 seizure, cocaine was moved in a manner different from storing the drugs in the Sunshine Office, and given the August 24, 2004 recorded conversation between Wilson and Rawlins that described a manner of moving drugs different from storing them in the Sunshine Office, the District Court's finding that the *modus operandi* of the conspiracy changed after September 20, 2003, was not clearly erroneous. The District Court's other findings, that Wilson's use of the Sunshine Office

---

> After the seizure, the modus operandi changed. According to Sylvester, the modus operandi changed to putting the drugs on one's body and getting through to security.
>
> Therefore, when Brook[es]'s testified that Mr. Wilson brought bags to his -- brought cocaine back to his place for storage, that would have had to have been before September of '03, September 20, '03.
>
> The Court finds that Mr. Wilson is responsible for . . . what was foreseeable conduct of the conspiracy through [the Sunshine] [O]ffice. And while it's not known what was in his, in the bags that, specific amounts in the bags that he stored in [the Sunshine] [O]ffice and subsequently took to the ramp area, to the baggage room, it is known that, reasonably, that would have occurred before September 20, 2003, and it was foreseeable, by him using [the Sunshine] [O]ffice, that others would be using [the Sunshine] [O]ffice as the modus operandi for the movement of drugs. That was the known, agreed to, pre-September 20th, method of operation.

6

to store three bags occurred prior to September 20, 2003, and that Wilson was involved in the conspiracy prior to September 20, 2003, were likewise not clearly erroneous. Indeed, Donovan's testimony regarding the bag drop-off and pick-up with Dorival in July 2002 bolsters the latter finding.

While the factual findings underlying Wilson's sentence were not clearly erroneous, the District Court abused its discretion when it applied the Sentencing Guidelines to these facts and attributed to Wilson the 30 kilograms of cocaine seized by authorities on September 20, 2003. The Guidelines state that "[w]ith respect to offenses involving contraband (including controlled substances), [a] defendant is accountable for all quantities of contraband with which he was directly involved and, *in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook*." U.S.S.G. § 1B1.3 app. n.2 (emphasis added). "Jointly undertaken criminal activity" is defined as "a criminal plan, scheme, endeavor, or enterprise undertaken by [a] defendant in concert with others, whether or not charged as a conspiracy[.]" *Id.* § 1B1.3(a)(1)(B).

In *Collado*, we interpreted U.S.S.G. § 1B1.3, and concluded that "whether an individual defendant may be held accountable for amounts of drugs involved in reasonably foreseeable transactions conducted by co-conspirators depends upon the degree of the defendant's involvement in the conspiracy." *Collado*, 975 F.2d at 995. We explained that "[i]n assessing the defendant's involvement, courts must consider whether the amounts distributed by the defendant's co-conspirators were distributed in furtherance

7

of the . . . jointly-undertaken . . . activity, were within the scope of the defendant's

agreement, and were reasonably foreseeable in connection with the criminal activity the

defendant agreed to undertake." *Id.* (internal quotation marks omitted). *Collado* made

clear that "a searching and individualized inquiry into the circumstances surrounding each

defendant's involvement in the conspiracy is critical to ensure that the defendant's

sentence accurately reflects his or her role." *Id.*

Here, while the District Court's finding that Wilson was active in the conspiracy

prior to September 2003 was not clearly erroneous, the District Court abused its

discretion when it failed to conduct a "searching and individualized inquiry into the

circumstances surrounding" Wilson's involvement in the conspiracy. *Id.* If it had

conducted such an inquiry, as required by *Collado*, the District Court, based on the

present record, would have concluded that it could not have properly attributed the 30

kilograms to Wilson. The record shows that Wilson's involvement in the conspiracy was

relatively minimal and largely unspecified. Brookes's testimony established that he held

three bags for Wilson, but Brookes did not specify when these events took place. While it

was not clearly erroneous to find that these dealings between Wilson and Brookes

happened before September 2003, it is quite possible that they occurred early in 2003, or

even in 2002. Thus, in light of the dearth of evidence linking Wilson to the conspiracy

around September of 2003, or to the shipment of cocaine on September 20, 2003, itself, it

was an abuse of discretion to conclude that the 30 kilograms were "reasonably

foreseeable [to Wilson] in connection with the criminal activity [he] agreed to undertake."

*Collado*, 975 F.2d at 995. In other words, holding Wilson responsible for the 30 kilograms moved on September 20, 2003, is largely speculative, requiring a leap that the record, as it currently stands, cannot justify. The only precise dates established by the Government on which Wilson was active in the conspiracy were July 2002 (when, according to Donovan's testimony, Wilson dropped off a bag with Dorival) and August 2004 (when Wilson had the recorded conversation with Rawlins). There simply is not enough in the present record to attribute to Wilson the 30 kilograms of cocaine seized almost precisely in the middle of those two dates.

III.

Wilson also alleges that the District Court engaged in impermissible judicial intervention that prejudiced his right to a fair trial. Wilson points to the District Court's questioning of witnesses and other actions designed to maintain control over the proceeding as improper advocacy for the Government.

"[T]he right to a fair trial does not translate into the right to a perfect trial." *United States v. Wilensky*, 757 F.2d 594, 599 (3d Cir. 1985). It is well established that a "trial judge is not forbidden from participating in the conduct of a trial[.]" *Id.* at 597; *see* Fed. R. Evid. 614(b) (permitting District Court to interrogate witnesses); Fed. R. Evid. 611(a) (requiring District Court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment"). However,

9

a judge must not "abandon his proper role and assume that of an advocate," *United States v. Green*, 544 F.2d 138, 147 (3d Cir. 1976), and "[t]he judge's participation must never reach the point where it appears clear to the jury that the court believes the accused is guilty." *United States v. Nobel*, 696 F.2d 231, 237 (3d Cir. 1982) (internal quotation marks omitted). Each case must be evaluated on its own facts to determine whether the District Court's conduct was so prejudicial as to deprive the defendant of a fair trial. *United States v. Beaty*, 722 F.2d 1090, 1093 (3d Cir. 1983). In doing so, we keep in mind that "errors that have little, if any, likelihood of . . . chang[ing] the result of the trial are deemed harmless[.]" *Wilensky*, 757 F.2d at 598 (internal quotation marks omitted).

After reviewing the record, we conclude that the District Court never crossed the boundary from impartial adjudicator to advocate for the Government, and Wilson's right to a fair trial was not prejudiced by the District Court. The District Court never engaged in conduct so prejudicial that it deprived Wilson of a fair trial. *See Beaty*, 722 F.3d at 1093.

IV.

After a thorough review of the record, we conclude that under *Collado*, the record as it now stands cannot support the conclusion that Wilson's involvement in the conspiracy was sufficient to attribute to him the 30 kilograms of cocaine seized by the authorities on September 20, 2003. Accordingly, we will remand the case for resentencing.