**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1336
_____

LUIS OCASIO,
                              Appellant

v.

COUNTY OF HUDSON; HUDSON COUNTY DEPARTMENT OF
CORRECTIONS; KIRK EADY, individually and in his official capacity as Deputy
Director of Hudson County Department of Corrections; OSCAR AVILES, individually
and in his official capacity as Director of Hudson County Department of Corrections;
THOMAS A. DEGISE, individually and in his official capacity as County Executive;
TRISH NALLS-CASTILLO, individually and in her official capacity as
provisional/acting Deputy Director and/or Director of Hudson County Department of
Corrections
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-14-cv-00811)
District Judge: Honorable William J. Martini
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on April 30, 2024

Before: KRAUSE, CHUNG, and RENDELL, *Circuit Judges*.

(Filed: June 5, 2024)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

KRAUSE, *Circuit Judge*.

Appellant Luis Ocasio served as a corrections officer at the Hudson County Department of Corrections (DOC) and as President of the Policemen's Benevolent Association Local 109 (the Union). After several difficult years, Ocasio sued DOC Deputy Director Kirk Eady—who, in addition to harassing Ocasio and other members of the Union, illegally wiretapped their calls—for violating his constitutional rights to freedom of speech and association.[1] In the same suit, Ocasio charged the County of Hudson and the DOC (together, County Defendants) and former DOC Director Oscar Aviles with ratifying Eady's behavior and maintaining a policy and practice of retaliating against Ocasio for his participation in the Union. During the sixth day of trial on these claims, the District Court issued an oral opinion granting judgment as a matter of law to Aviles and the County Defendants and dismissing the claims against them.[2]

Ocasio argues that the District Court erred when it dismissed his claims against Aviles and the County Defendants, excluded relevant evidence at trial, and exhibited improper bias against Ocasio and his counsel. While the latter assertions are without merit, we agree with Ocasio on the first: Because the District Court prematurely ruled

---

[1] Ocasio brought claims under both the United States and New Jersey Constitutions. *See* U.S. Const. amend. I; N.J. Const. art. I, paras. 6, 18–19. New Jersey courts may interpret their State Constitution's speech and associational provisions more broadly than the federal First Amendment, *see State v. Schmid*, 423 A.2d 615, 626–28 (N.J. 1980), but because any potential distinction would not affect our reasoning here, we treat the relevant constitutional provisions as coterminous for purposes of this appeal.

[2] The case proceeded against Eady, whom the jury ultimately found liable.

that Aviles and the County Defendants were not subject to *Monell* liability, we will reverse and remand for trial on that issue.

## DISCUSSION[3]

### I.   Judgment as a Matter of Law

A court may grant judgment as a matter of law when it finds that a reasonable jury "would not have a legally sufficient evidentiary basis to find for the [moving] party on that issue." Fed. R. Civ. P. 50(a)(1). Judgment as a matter of law should be granted "sparingly," and "[i]n determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Ambrose v. Township of Robinson*, 303 F.3d 488, 492 (3d Cir. 2002) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)).

To succeed on his constitutional claims, Ocasio needed to show that (1) he engaged in "constitutionally protected conduct," (2) he suffered "retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights," and (3) there exists "a causal link between the constitutionally protected conduct and the

---

[3] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367, and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of an order granting a motion for judgment as a matter of law, and we will affirm "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). We review a trial court's decision to exclude evidence and question witnesses for abuse of discretion. *United States v. Kemp*, 500 F.3d 257, 295 (3d Cir. 2007); *Chainey v. Street*, 523 F.3d 200, 209 n.4 (3d Cir. 2008).

retaliatory action." *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006). Ocasio clearly satisfies the first prong: "[M]embership in a public union is always a matter of public concern" entitled to constitutional protection, *Palardy v. Township of Millburn*, 906 F.3d 76, 83 (3d Cir. 2018), and Ocasio served as President of the Union during the relevant period.

Whether he satisfies the second and third prongs is less clear. Although the jury found that Eady violated Ocasio's constitutional rights through retaliatory conduct, Aviles and the County Defendants are not liable for Eady's behavior merely because they exercised authority over him. Rather, Ocasio must show that his rights were violated pursuant to "an official policy or practice" that can properly be laid at the feet of a county policymaker. *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006); *see also Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978). He may satisfy this requirement by demonstrating deliberate indifference on the part of the relevant policymaker, *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996), but the standard is "stringent," "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)).

Ocasio presented evidence from which a reasonable jury could have concluded that Aviles, the relevant policymaker,[4] was deliberately indifferent, i.e., that he failed to

_____

[4] Before trial, the parties jointly stipulated that Aviles was the relevant policymaker for purposes of *Monell* liability.

"train, discipline or control" Eady in response to "contemporaneous knowledge" of his misdeeds or "knowledge of a prior pattern of similar incidents." *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998). At trial, Ocasio testified that he submitted a Tort Claim Notice to the County alleging that Eady had illegally wiretapped his and other Union members' phone calls. Although Aviles received the Notice, he took no action to investigate the allegations, discipline Eady, or insulate Ocasio or the other union members from Eady's control. When, several months later, the FBI executed a search warrant at the correctional facility to investigate the wiretapping allegations, Aviles again took no action to discipline Eady or to limit his responsibility over the Union. In fact, Aviles arguably sympathized with him, telling him to "[h]ang in there and stay strong" and keeping him in the loop on union-related business. App. 1778. Granted, other trial evidence cuts against a finding of municipal liability. Soon after receiving the Tort Claim Notice, Aviles spoke with the County Counsel, who followed up with Ocasio and was met with silence. And Aviles ultimately revoked Eady's union-related duties. But given all the evidence, a reasonable jury could have found that Aviles was deliberately indifferent to Eady's violations of Ocasio's rights.

A reasonable jury also could have found that the Defendants' revocation of Ocasio's "full union release time"—the County's longstanding practice of allowing the Union President to spend unlimited hours working on union-related matters during his regular shift—constituted an impermissible policy of retaliation. At trial, the jury was informed that the Union President had been given full release time since at least 2004, and possibly longer. It was not until shortly after Ocasio was reelected President that

5

Eady wrote him a memo revoking his full release time and directing him to contact Eady with any future release requests. In his testimony, Aviles explained that he and other county officials revoked the full release time in response to a recent state report calculating the high taxpayer costs associated with public employee union benefits, including release time. Nonetheless, a reasonable jury could still have found that this change in policy amounted to official retaliation, especially combined with its timing shortly after Ocasio's reelection and earlier testimony from Ocasio concerning Aviles's apparent hostility to the Union. *See* App. 436–38 (Aviles told Ocasio to "mind [his] fucking business" and that he "would pay for it" after Ocasio reported union members' complaints of sexual harassment), 442–46 (Aviles "reamed" Ocasio whenever a union-related website posted articles criticizing the behavior of corrections staff), 720 (Aviles told Ocasio he would "put a hex" on him for filing multiple member grievances).

## II.    Evidentiary Rulings and Judicial Bias

Conversely, we decline to disturb the District Court's evidentiary rulings or find judicial bias. Under Fed. R. Evid. 403, a court may exclude relevant evidence if its probative value is substantially outweighed by, among other things, a danger of "unfair prejudice," "wasting time," or "undue delay." The Court did not abuse its discretion when it excluded the vulgar email that Eady sent to Aviles because the email, which went toward Aviles's dislike of the Union, proved little regarding Aviles's state of mind and

6

was potentially inflammatory.[5] Nor was it improper for the Court to preclude Ocasio's counsel from asking Aviles about the Union potentially picking up part of the cost associated with Ocasio's full release time. The question was only arguably relevant to the County's decision to revoke full union release time, and it followed an extended colloquy about employee duties and release time costs. Moreover, Ocasio's counsel had already presented copious evidence, described above, suggesting that the County's stated reason for revoking release time was pretextual. The exclusion of this evidence was therefore not "clearly unreasonable." *United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009) (citation omitted).

Ocasio's claim of judicial bias is similarly unavailing. First, the District Court was well within its authority to question Ocasio on cross-examination. Under Fed. R. Evid. 614(b), a court may interrogate witnesses, and the Court's brief dialogue with Ocasio during his extensive testimony could not be construed as "partisan" or "prejudicial." *Chainey v. Street*, 523 F.3d 200, 222 (3d Cir. 2008) (quoting *Riley v. Goodman*, 315 F.2d 232, 235 (3d Cir. 1963)). Second, the District Court did not impermissibly "inject[] its view of the facts into the case," Opening Br. 49, when it expressed that there was "a good reason why" the County revoked Ocasio's full release time, App. 1370, and that the union-related website published certain "personal attacks" on corrections staff, App. 1494. A court may express its "opinions formed . . . on the

---

[5] Plaintiffs would have a stronger argument had Eady—the email's author—won at trial, as the vulgar email was highly probative of his own state of mind. But Eady lost at trial, so any error was clearly harmless. *See Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 112 (3d Cir. 1999).

7

basis of facts introduced" at trial, so long as they do not "display a deep-seated favoritism or antagonism that would make fair judgment impossible," *Liteky v. United States*, 510 U.S. 540, 555 (1994), and these opinions do not. And third, the District Court's unfortunate expressions of frustration—for example, suggesting that one of Ocasio's trial exhibits was uninteresting, and calling one of Ocasio's arguments "crap" at sidebar, App. 865—may have been intemperate but, ultimately, are just instances of "impatience, dissatisfaction, [or] annoyance" that neither cast doubt on the fairness of the underlying proceedings nor support the case's reassignment to a different judge on remand, *see Liteky*, 510 U.S. at 555–56.

## CONCLUSION

For the foregoing reasons, we will reverse the judgment of the District Court and remand for a trial on Ocasio's remaining claims against Aviles and the County Defendants.

CHUNG, *Circuit Judge*, dissenting in part.

I join my colleagues' opinion in almost all respects. I would conclude, however, that the evidence was insufficient for a reasonable jury to find Defendants liable for Eady's constitutional violations under a theory of deliberate indifference. After Aviles read the Notice, he worked with the vendor of the jail's phone system to determine whether Ocasio's allegations were plausible and maintained contact with County Counsel, who was also trying to assess Ocasio's allegations. In addition, the record contains no evidence that Aviles had reason to believe the Notice's allegations had any merit. Accordingly, for the period following the Notice and before the FBI search, I would conclude there was insufficient evidence for the jury to find that Aviles was deliberately indifferent to Eady's retaliatory conduct. While Aviles's inaction *following* the search was substantially more problematic, Defendants may be held liable only for actions sufficient to "deter a person of ordinary firmness from exercising his constitutional rights," *Thomas*, 463 F.3d at 296, and after the search, Eady took no such action.[1] I therefore respectfully dissent from the portion of the opinion regarding Aviles's deliberate indifference.

---

[1] The record reflects that, following the FBI search, Eady merely reduced a union meeting's duration from eight hours to four hours.